State v. Stroud and State v. Mason and State v. Willis

STATE OF NORTH CAROLINA v. VIRGIL W. STROUD
— AND —
STATE OF NORTH CAROLINA v. DONALD MASON
— AND —
STATE OF NORTH CAROLINA v. LEWIS PIERSON WILLIS

No. 703SC491

(Filed 16 December 1970)

1. Burglary and Unlawful Breakings §§ 5, 10; Larceny § 7— breaking and entering — possession of burglary tools — larceny — sufficiency of evidence

In a prosecution charging three defendants with breaking and entering, larceny, and possession of burglary tools, the State's evidence was sufficient to carry the case to the jury against each of the three defendants on each of the three separate offenses, where the evidence was to the effect (1) that three unidentified men in a 1963 green Chevrolet were observed at the scene of the break-in only minutes before the three defendants were found in a 1963 green Chevrolet that contained the stolen safe, as well as punches, crowbars, chisels, and other

State v. Stroud and State v. Mason and State v. Willis

tools; (2) that the car was only a short distance from the store from which the safe had been removed; and (3) that the lock on the back door of the store had been pried completely off by the use of implements such as those found in the Chevrolet.

2. **Criminal Law § 118— instructions on the contentions of the parties — prejudicial error**

Trial court's remarks in stating the contentions of the parties constituted an expression of opinion in violation of G.S. 1-180 and warranted a new trial, notwithstanding the stated contentions might have been properly argued to the jury by the solicitor, where (1) the warmth and vigor of the court's remarks were capable of impressing the jury with the strength of the State's case and the weakness of the alibi testimony of one defendant, and (2) several of the court's expressions included assumptions of evidence entirely unsupported by the record.

Chief Judge MALLARD concurring.

APPEAL by defendants from *Parker, Superior Court Judge,* 3 April 1970 Session, CARTERET County Superior Court.

Defendants were tried upon bills of indictment charging them with breaking and entering, larceny, possession of burglary tools and safecracking.

The State presented evidence tending to show that a furniture store owned by R & N Furniture Company in Morehead City was broken into in the early morning hours of 27 January 1970. A safe containing valuables and weighing approximately 500 pounds was removed. Mrs. Shirley Toler, who lives in an apartment near the store, saw a car near the back of the store between 10:00 and 11:00 p.m. on the night of 26 January. At about 1:30 the morning of 27 January, she was awakened by a loud noise. Upon looking out her bedroom window she again saw a car near the building and at this time observed three men there. One of the men was white. All she recalled about the car was that it had four taillights. Fred Tillery, who lived next door and immediately across the alley from the store testified that he had heard a car coming through the alley between 10:00 and 10:30 on 26 January. It sounded as if it had a "busted muffler." He looked out and saw a green 1963 Chevrolet parked behind the store. A person with red hair had his head against the window. The car remained there for about 45 minutes and left. Between 2:00 and 2:30 a.m. on the 27th, Mr. Tillery again heard a car come through the alley. He looked and saw it being backed toward the rear of the store. In his opinion it was the same car as he had seen earlier.

Both Mrs. Toler and Mr. Tillery immediately called the police.

Two officers of the Morehead City Police Department responded to the calls and found a 1963 green Chevrolet parked on the left-hand side of a street approximately four blocks from the R & N store. The defendant Willis' head was lying out the right front window. The trunk lid of the car was slightly lifted and the officers could see the bottom of the safe in the trunk. Before they approached the car, the two doors on the left-hand side opened and two men ran. One of the officers identified them as defendants Stroud and Mason. The car was owned by Stroud. Willis was removed from the car and arrested. A loaded revolver and leather gloves were found near his left leg. Punches, crowbars, chisels and other tools were found with the safe in the trunk of the car and were offered into evidence as exhibits. One of the officers testified that it was exactly six minutes from the time Mr. Tillery's call was received until Willis was under arrest. Twenty or twenty-five minutes later, Mason was arrested while walking along the street about ten blocks away.

Two police officers arrested Stroud at his home approximately 5:00 to 5:30 a.m. the morning of 27 January. Both Stroud and his wife insisted that he had been at home all night. When Stroud got to the door where he could see the place where his car was usually parked he stated that it had been stolen.

Willis and Mason offered no evidence.

Stroud testified that on the evening of 26 January 1970 he had taken Willis to the grocery store because Willis had lost his driver's license and was unable to drive. They also went to Atlantic Beach where they picked up Stephen Emory. Thereupon they returned to the Willis home where they were joined by defendant Mason. The four men then rode around drinking and talking until around 9:00 p.m. at which time Stroud dropped Willis and Mason off at the Willis house and dropped Emory off at a taxi stand. Stroud then went home, arriving there about 9:30 p.m. He remained there until awakened at 5:20 the following morning by the police officers. As he was leaving the house with the officers, Stroud noticed that his car was gone.

Stroud's wife testified that her husband arrived home on 26 January shortly after 9:00 p.m. and did not leave the house again until the officers woke them the following morning.

At the conclusion of all the evidence the charge of safe-cracking was dismissed upon motion of defendants. The jury returned verdicts of guilty as to the other charges and judgments were entered imposing consecutive sentences as to each defendant of from eight to ten years on each count. All defendants appealed.

*Attorney General Morgan by Trial Attorney Jacobs for the State.*

*Wheatly & Mason by C. R. Wheatly, Jr. for defendant appellants Virgil W. Stroud and Lewis Pierson Willis.*

*Sherman T. Rock for defendant appellant Donald Mason.*

GRAHAM, Judge.

[1] Defendants assign as error the court's denial of their motions to dismiss for a lack of sufficient evidence.

The State's evidence placed three unidentified men in a 1963 green Chevrolet at the scene of the break-in only minutes before the three defendants were found in a 1963 green Chevrolet which contained the stolen safe and the various described implements. The car was only a short distance from the store from which the safe, weighing approximately 500 pounds, had been removed. The lock on the back door of the store had been pried completely off and there was other evidence that implements, such as those found in the trunk of the car, had been used for the purpose of the break-in. In our opinion this evidence was sufficient to carry the case to the jury against each of the three defendants on each of the three separate counts. See *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753; *State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335; *State v. Godwin,* 269 N.C. 263, 152 S.E. 2d 152; *State v. Nichols,* 268 N.C. 152, 150 S.E. 2d 21.

[2] The court's charge to the jury covers 66 pages in the record and is the subject of 60 exceptions. Most of these exceptions are grouped under a single assignment of error wherein it is contended that the trial court, through the manner in which the jury was instructed, expressed an opinion on the evidence. Among those portions of the charge which defendants say were prejudicial are the following:

"The State says and contends they were identified between ten and eleven o'clock by Mrs. Toler and Mr. Tillery both

as having been there. The State says and contends that
Mr. Tillery identified them at the time of this loud BOOM,
which the State says and contends was the time that the
safe was put in the car and that there were three.

\*        \*        \*

The State says and contends that the defendant Stroud had
been associating with the defendant Willis and that they
had talked together and that the only reasonable inference
that fair minded people could arrive at, the only reasonable
conclusion they could arrive at that they were closely re-
lated, they were excellent friends, they had worked this
out; that Stroud had been to see him and carried to, him to
the grocery store some two or three blocks away, another
one within a half block from one to three times a week,
and the State says from the testimony of the defendant
Stroud himself, he says quite frequently they would go
for groceries and either have a bottle with him or pick up
one on the way and ride around and drink liquor for
several hours before the defendant Stroud would bring the
defendant Willis back to his home with the groceries. Now,
the State says that is quite significant and you should so
find when you come to consider this evidence; that here's
a man who has associated with a person who was actually
found in the car with the stolen safe, for four to five
months drinking whiskey with him from one to three
times a week for four to five months, rode around with
him quite frequently one or more times a week during
those periods of four to five months, for four or five
months.

\*        \*        \*

The State further says and contends that there's another
significant point: that Mr. Stroud has taken the stand and
testified he was not there; that Mrs. Stroud has taken the
stand and testified he was not there because he was home
asleep. Well, the State says and contends that that is evi-
dence that you can weigh and consider from your own
standpoint. You have the right to consider whether or not
the average wife would stand by her husband. You have
the right to consider, and as the State says and contends
you should conclusively find that nine hundred and ninety-
nine wives out of a thousand would stand by their husbands
when he's in trouble and serious trouble even though it

might mean shading the truth sometimes as the State says and contends even to the point of committing perjury, and the State says and contends that you have a right to consider all of these factors, factual situations when you come to make up your verdict.

. . . the State says and contends that evidence in regard to what became of the keys in the car is absent, but that you ladies and gentlemen have a right to consider what might be the reasonable act of the average and reasonable person.

The State says and contends you have the right to consider whether you would living in the City of Morehead, a fair size town we might say in North Carolina, having lived here ten or 15 years and lived here during the Summer when you have somewhat of a population explosion with numerous people around, would the average person leave the keys to his car in his car in the City of Morehead at night time from nine or nine-thirty until the following morning, sometimes inadvertently but most of the time they do not. If those keys were not left in the car as the State says and contends, who put them in there? Who were they taken from, as the State says and contends if they were not left in the car and the car was actually parked there as the defendant Stroud contends then the only way the keys could have gotten back into the car would have been through and by the knowledge and consent of the owner Mr. Stroud, and the State says that is a situation that deserved your consideration, and that you should draw such inference from this situation as the minds of reasonable men might draw under the same or similar circumstances.

\*          \*          \*

He [Stroud] further says and contends that when he returned home he left his car on the street; he went in about 9:30; his wife met him and that his wife has testified that immediately she closed the door and turned and looked at the clock, and she says and contends that, and he says and contends that although the State might ask you to consider it rather strange that a wife who is accustomed to her husband coming in late, who is accustomed to taking his friend Willis to the grocery store one to three times a week and who is accustomed to him riding around with his friend Willis, and others while taking a few nips from

a bottle of liquor and talking and fraternizing, and although the State might ask you to look at it as being somewhat strange that she being accustomed to these activities on the part of her husband, that on this particular night, just on this one night so far as the evidence tends or might tend to show, out of four to five months one to three times a week she just happened to close the door and just happened to turn and just happened to look at the clock and the clock happened to be a little after nine o'clock, . . . "

These expressions by the trial judge, in their warmth and vigor, though stated in the form of contentions, were capable of impressing the jury with the strength of the State's case and the weakness of the alibi of defendant Stroud. Such expressions, though unintended by the trial judge to prejudice anyone, are in violation of G.S. 1-180 and constitute prejudicial error. *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412. *State v. Smith,* 240 N.C. 99, 81 S.E. 2d 263. It may well be that the contentions stated by the court were actually argued to the jury by the solicitor. However, an argument that would be permissible when made by the solicitor may, when repeated by the court as a contention, give emphasis that would weigh too heavily upon defendant. *State v. Maready,* 269 N.C. 750, 153 S.E. 2d 483.

Several of the court's expressions are particularly harmful because they include assumptions of evidence entirely unsupported by the record. For instance, the court charged that the State contended that Mrs. Toler and Mr. Tillery had identified defendants between ten and eleven o'clock and also at the time the safe was being put in the car. The evidence was to the contrary. Mrs. Toler recalled only that one of the three men she saw at the scene was white. Mr. Tillery stated one had red hair. It was obvious from their testimony that they could not specifically describe or identify the men. We further observe that there was no evidence that Stroud associated with Willis "drinking whiskey with him for from one to three times a week for four to five months." Likewise, the record is silent as to where Stroud's car keys were at the time the car was allegedly stolen. Hence, the vigorous charge with respect to the State's contention that people in Morehead City do not normally leave their car keys in their cars was inappropriate, particularly when considered along with other portions of His Honor's instructions. "While ordinarily error in stating conten-

tions of the parties must be brought to the trial court's attention in time to afford opportunity for correction, where the misstatement of a contention upon a material point includes an assumption of evidence entirely unsupported by the record, the misstatement must be held prejudicial, nothwithstanding the absence of timely objection. *In Re Will of Atkinson,* 225 N.C. 526, 35 S.E. 2d 638; *State v. Wyont,* 218 N.C. 505, 11 S.E. 2d 473; 7 Strong, N. C. Index 2d, Trial § 34, p. 338." *State v. Bradshaw,* 7 N.C. App. 97, 99, 171 S.E. 2d 204, 206.

The defendants Stroud and Willis contend that allegations in the bills of indictment were insufficient to properly charge breaking or entering or larceny; also, that there was a fatal variance between the indictments and the proof. These contentions are without merit. Other assignments of error are also asserted by Stroud and Willis. We do not discuss these as a new trial is necessary and they may not recur.

New trial as to all defendants.

Chief Judge MALLARD and Judge PARKER concur.

Chief Judge MALLARD concurring.

I concur in the judgment of the court and in the opinion but add the following which has not been alluded to therein. Under G.S. 1-180 prior to its amendment effective 1 January 1970, it was required, among other things, that "the judge shall give equal stress to the *contentions* of the plaintiff and defendant in a civil action, and to the State and defendant in a criminal action." (Emphasis Added.) Under this statute as it then existed, the Supreme Court held on many different occasions that a trial judge instructing the jury was not required to state the contentions of the State or the defendant; however, if the judge undertook to state the contentions of one, he must also give the equally pertinent contensions of the other. *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412 (1966); *State v. King,* 256 N.C. 236, 123 S.E. 2d 486 (1962); *State v. Jones,* 249 N.C. 134, 105 S.E. 2d 513 (1958); *State v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768 (1956); *State v. Colson,* 222 N.C. 28, 21 S.E. 2d 808 (1942).

G.S. 1-180, after the amendment effective 1 January 1970, reads as follows:

"*Judge to explain law, but give no opinion on facts.*—No judge, in giving a charge to the petit jury in a criminal

action, shall give an opinion whether a fact is fully or sufficiently proven, that being the true office and province of the jury, but he shall declare and explain the law arising on the evidence given in the case. He shall not be required to state such evidence except to the extent necessary to explain the application of the law thereto; provided the judge shall give equal stress to the State and defendant in a criminal action."

It is noted that this statute does not contain the word "contention." It is, therefore, clear that in charging the jury in a criminal case, the trial judge is not required by statute or case law to state the contentions of the parties.

However, in civil cases the rule may be otherwise. Under Rule 51 (a) of the Rules of Civil Procedure, relating to instructions to the jury by the judge in civil cases, there is a proviso which reads: "(P)rovided, the judge shall give equal stress to the *contentions* of the various parties." (Emphasis added.)

It is in the giving of contentions in criminal cases that error frequently occurs.

In charging the jury in a criminal case, the trial judge would be well advised to refrain from giving any contentions of the State or the defendant. However, if the judge feels that it is absolutely necessary that he give some contentions, it would appear that language to the effect that the State contends the defendant ought to be found guilty and the defendant contends that he ought not to be found guilty would be a sufficient statement of the contentions. At least, this would be giving equal stress to the State and the defendant.