STATE OF NORTH CAROLINA v. MITCHELL WAYNE BARBOUR

No. 65

(Filed 14 April 1971)

1. Kidnapping § 1— elements of the offense

    At common law and as used in G.S. 14-39, the word "kidnap" means the unlawful taking and carrying away of a human being by force and against his will.

2. Kidnapping § 1— commission of offense by threats and intimidation

    The use of actual physical force or violence is not essential to the commission of the offense of kidnapping, but the offense may be committed by threats and intimidation and appeals to the fears of the victim which are sufficient to put an ordinarily prudent person in fear for his life or personal safety, or to overcome the will of the victim and secure control of his person without his consent and against his will.

3. Kidnapping § 1— unlawful taking — lawful boarding of vehicle — driver forced by hitchhiker to go where commanded

    Although defendant hitchhiker lawfully boarded the victim's truck in response to the victim's invitation, and there was consequently no unlawful taking and carrying away of the victim by force and against his will at the inception of defendant's travel in the truck, there was an unlawful taking and carrying away of the victim by defendant so as to constitute kidnapping from the time defendant held a knife against the victim's throat and chest and, under the threat of killing him, commanded and caused him against his will to abandon his own plans and drive the truck as directed by defendant.

4. Criminal Law § 169— harmless error in admission of testimony

    In this kidnapping prosecution, admission of testimony by a witness that, upon seeing defendant walk in the direction of her house after the victim escaped from him, she telephoned her husband and told him "to be sure to get the keys out of the truck and make the kids stay in the house," when considered in the contest of the entire evidence, was not of sufficient significance to constitute prejudicial error.

5. **Criminal Law § 16— misdemeanor consolidated with felony — original jurisdiction of superior court**

The superior court has jurisdiction to try a misdemeanor which may be properly consolidated for trial with a felony under G.S. 15-152. G.S. 7A-271(a) (3).

6. **Criminal Law § 92— consolidation of assault and kidnapping charges**

Consolidation of assault and kidnapping charges was permissible under G.S. 15-152 where the charges arose out of the same transaction and elements of the assault charge are essentials of the kidnapping charge.

7. **Criminal Law § 171— assault and kidnapping charges — harmless error in instructions on assault**

Where the jury found defendant guilty of kidnapping and of assault, the assault charged by warrant is the identical assault referred to in the kidnapping indictment, and the cases were consolidated for judgment, defendant was not prejudiced by error, if any, in the judge's instructions with reference to the definition of a deadly weapon when charging the jury in respect of the separate assault charge.

8. **Criminal Law § 116— instructions — failure of defendant to testify**

Court's instruction to the effect that defendant's failure to testify was not to be considered against him, although meager and not commended, met minimum requirements.

9. **Criminal Law § 116— failure of defendant to testify — request for instructions**

Ordinarily, it would seem better to give no instruction concerning a defendant's failure to testify unless such an instruction is requested by defendant.

10. **Kidnapping § 2— punishment**

G.S. 14-39 leaves the term of imprisonment for kidnapping in the discretion of the court, imprisonment for life being the maximum punishment.

APPEAL by defendant from *Bailey, J.,* November 1970 Session, JOHNSTON Superior Court.

Defendant was charged in separate warrants (1) with assaulting J. Alton Wood with a deadly weapon, to wit, a knife, and (2) with kidnapping J. Alton Wood. In each case, defendant waived a preliminary hearing and was bound over to the Superior Court.

In the Superior Court, defendant was tried for kidnapping on the following bill of indictment: "THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Mitchell Barbour late of the County of Johnston on the 30 day of July 1970 with force and arms, at and in the county aforesaid, did unlawfully, wilfully

and feloniously and forcibly kidnap one J. Alton Wood to wit: by forcibly causing the said J. Alton Wood to drive him several miles at the point of a knife against the said J. Alton Wood's throat, on a pickup truck owned by J. Alton Wood and against the said J. Alton Wood's wishes, with threat of serious bodily harm to the said J. Alton Wood, against the form of the statute in such case made and provided and against the peace and dignity of the State."

In the Superior Court, defendant was tried for assault with a deadly weapon on the original warrant which charged that defendant on July 30, 1970, in Johnston County, "did unlawfully, wilfully and feloniously assault Alton Wood with a pocketknife approximately six inches long, the blade being very sharp, a deadly weapon, by putting the blade of the knife to the throat of the said Alton Wood with the threat of taking his life with said weapon."

The court consolidated all charges for trial.

Upon finding defendant was an indigent, the court appointed Wallace Ashley, Jr., Esq., to represent him.

The only evidence was that offered by the State. It consists of the testimony of J. Alton Wood, the State's principal witness, of Mrs. Linda Turner, of Sergeant Mitchell of the Clayton Police Department, and of State Highway Patrolman S. M. Bracey.

Summarized, except where quoted, the evidence tends to show the facts narrated below.

J. Alton Wood, age 66, a farmer, lives on Highway 70 about two miles south of Clayton. On Thursday, July 30, 1970, he went to Smithfield; and, about 5:00 p.m., was driving his truck north along Highway 70 on his way home. At a shopping center "about two miles out of Smithfield," Wood observed defendant, who was standing ("thumbing") beside the road. Mistaking defendant for a friend of his son, Wood stopped and offered him a ride. Defendant "opened the door and stepped in." When Wood told defendant he was not the person he thought he was picking up, defendant "didn't answer . . . nor say a word."

After they had traveled in silence for "maybe four miles," Wood felt something stinging him beside his neck. He jerked his head around and "there was a knife to (his) throat." When

Wood asked what he meant by his conduct, defendant said: "I'm an escaped prisoner, I have had seven years in prison, I've pulled five of them, this is my first chance of escaping, and god-dammit, you're going to help me escape."

Defendant ordered Wood to drive (on Highway 70) to Clayton, there "take" Highway 42, go on Highway 42 to Highway 50 (about ten miles), and then "turn left the first dirt road, carry him up that road and (defendant) could be on (his) way." While giving these directions, defendant was holding a knife right next to Wood's chest. When Wood remarked that "(t)hey" would get defendant sooner or later, defendant replied: "Yes, they will but you will not be able to ever tell it, you will be a witness against me and god-dammit I'm killing you." Wood, in fear of his life, spoke of his wife and children and begged defendant not to kill him. Defendant cut Wood three times, "not deep, just nipped (his) throat." Each time Wood begged defendant "to take the knife from (his) throat." Defendant held the knife at Wood's throat or chest while they traveled "approximately 9 or 10 miles." Defendant "tantalized" Wood by telling him he looked "like a right good old scoundrel" and that it was "a pity to kill (him)."

Although fearful of his life, Wood did not panic.

At Woodard's Esso Station, "just this side of Clayton," Wood jerked the steering wheel of his truck but defendant jerked it back and said: "god-damn you, I will kill you right now." Then Wood drove on to Clayton and there, in accordance with defendant's direction, turned west onto Highway 42 and drove towards Highway 50. On his way to Clayton, Wood had passed his own home and was moving farther away from it when the following occurred.

On Highway 42, just before reaching Edward Smith's store-station, Wood saw a Ford station wagon coming up the road. Its "blinkers" indicated it was turning into Smith's station. Then, in Wood's words: "I knew that was my only chance to get shed of him somehow. I jerked my steering wheel right short to the left. The truck went up on the sides, the door flew open, and out of it he went. His left arm caught on the door and he was down there. I reached and got my keys. I run in Mr. Smith's store. I told Mr. Smith, give me your shotgun. 'I want to kill a man.' I told him what he did to me and dashed back

out of the door. . . . Smith and I run into his house and called the law."

When Wood turned into Smith's store "practically all of (his) tools, jack and stuff, went out the door out on the highway." These were found by State Highway Patrolman Bracey "on the eastbound traffic lane of 42 Highway near Mr. Smith's store . . . . "

Mrs. Linda Turner lives on Highway 42 one mile west (towards Highway 50) of Smith's store. On July 30, 1970, she saw Wood turn into the Smith store. In Mrs. Turner's words: "He just whipped on in real fast. The door of the truck came open, and a jack, a small one, and some stuff fell out of the truck." According to Mrs. Turner, defendant "was hanging on to the door when the door came open to keep from falling out." She saw defendant get off the truck and walk away. When she last saw him, defendant was walking down Highway 42 towards her house. She went into Smith's house and from there called the sheriff and also her husband.

Defendant was arrested about 6:45 p.m. in Clayton by Sergeant Mitchell. Sergeant Mitchell informed defendant of the charges involving Wood. Defendant was put in the police car. After Mitchell had driven about two blocks, defendant rolled down the window, had one leg out of the window and was trying to escape. When Sergeant Mitchell stopped the car, defendant came out of the car "fighting." Mitchell subdued him and put handcuffs on him. When arrested, defendant had an "opened" knife in his right front pocket.

The jury returned "a verdict of guilty as charged on both counts." The "two cases" were consolidated for judgment. One judgment was pronounced in which the court "ADJUDGED that the defendant be imprisoned for the term of his natural life in the custody of the State Department of Corrections." Defendant excepted and appealed.

An order was entered in which (1) defendant was permitted to appeal *in forma pauperis,* and (2) defendant's trial counsel was appointed to represent defendant in connection with his appeal, and (3) provision was made for payment by the State of North Carolina for all necessary costs incident to perfecting the appeal.

*Attorney General Morgan and Assistant Attorney General Ray for the State.*

*Wallace Ashley, Jr., for defendant appellant.*

BOBBITT, Chief Justice.

[1]  At common law and as used in G.S. 14-39, the word "kidnap" means the unlawful taking and carrying away of a human being by force and against his will. *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870 (1965), appeal dismissed and *certiorari* denied, 382 U.S. 22, 15 L. Ed. 2d 16, 86 S.Ct. 227 (1965).

[2]  "The use of actual physical force or violence is not always essential to the commission of the offense of kidnapping . . . . The crime of kidnapping is frequently committed by threats and intimidation and appeals to the fears of the victim which are sufficient to put an ordinarily prudent person in fear for his life or personal safety, or to overcome the will of the victim and secure control of his person without his consent and against his will, and are equivalent to the use of actual force or violence." *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966).

Although not germane to the present case, it is noteworthy that the unlawful taking and carrying away of a human being fraudulently is kidnapping within the meaning of G.S. 14-39. *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577 (1971) ; *State v. Gough,* 257 N.C. 348, 126 S.E. 2d 118 (1962).

[3]  Defendant assigns as error the denial of his motion for judgment as in case of nonsuit. He points out that defendant got on the truck lawfully in response to Wood's invitation. Based on these facts, defendant contends there was no "unlawful taking" and therefore the State failed to establish one of the essential elements of the crime of kidnapping. The contention is without merit.

"Where the gravamen of the crime is the carrying away of the person, the place from or to which the person is transported is not material, and an actual asportation of the victim is sufficient to constitute the offense without regard to the extent or degree of such movement; it is the fact, not the distance, of forcible removal which constitutes kidnapping." 51 C.J.S. Kidnapping § 1, pp. 502-503. Accord, *State v. Lowry, supra.*

State v. Barbour

Standing alone, the fact that the taking and carrying away of Wood was accomplished by means of a truck owned and operated by Wood is of no avail as a defense to the alleged kidnapping. *State v. Bruce, supra; State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969) ; *State v. Woody,* 277 N.C. 646, 178 S.E. 2d 407 (1971). In each of these cases, the defendant unlawfully boarded the car of the victim.

In *State v. Penley,* 277 N.C. 704, 178 S.E. 2d 490 (1971), the defendant, one of a group of prisoners being transported on a prison bus, was convicted of kidnapping the officer-driver thereof. There, the defendant was required rather than invited to enter the bus. Accord, *People v. Valdez,* 3 Cal. App. 2d 700, 40 P. 2d 592 (1935). Valdez is cited in support of this statement: "It is not necessary, however, for the unlawfulness to exist from the beginning of the transaction." 1 Am. Jur. 2d Abduction and Kidnapping § 12, p. 168.

No decision of this Court has come to our attention where a motorist who invited a hitchhiker to ride with him is compelled by the force and intimidation exerted upon him by the hitchhiker to abandon his own desired course of travel and to drive his car as commanded by the hitchhiker.

No case involving this factual situation has come to our attention except the companion cases of *Krummert v. Commonwealth,* 186 Va. 581, 43 S.E. 2d 831 (1947), and *Famular v. Commonwealth,* 186 Va. 586, 43 S.E. 2d 833 (1947). Krummert and Famular were standing on a street corner in Richmond, "waiting to catch a ride," when a motorist offered to take them to a street intersection where they could "best catch a ride" to Washington, D. C. Accepting the motorist's invitation, Krummert and Famular boarded the car. When the motorist stopped at the indicated street intersection, Krummert and Famular, instead of getting out of the car, proceeded to take charge. At gunpoint, they forced other passengers of the motorist to get out and ordered the motorist to drive them on north and out on the Washington highway. About ten miles out of Richmond, the car was stopped by a State Traffic Officer after he had shot one of the rear tires. Under these circumstances, Krummert and Famular were arrested and thereafter tried and convicted of kidnapping.

State v. Barbour

It may be conceded that there was no unlawful taking and no unlawful carrying away of Wood by force and against his will at the inception and during the first four miles or so of defendant's travel with Wood. But there was an unlawful taking and carrying away of Wood by defendant from the time defendant held a knife against the throat and chest of Wood and, under threat of killing him, commanded and caused him against his will to abandon his own plans and drive the truck as directed by defendant. By acquiring dominance and control over Wood's person and actions in this manner, defendant forfeited his status as an invitee and his conduct is to be judged as if at that time he unlawfully boarded Wood's truck.

[4]  Defendant assigns as error the admission of Mrs. Turner's testimony that, when she telephoned to her husband from Smith's house, she told him "to be sure to get the keys out of the truck and make the kids stay in the house." This testimony was included in Mrs. Turner's response to a general question on cross-examination. When Mrs. Turner had completed her answer, defendant entered a general objection "to this." The objection was overruled. There was no motion to strike. Rather than lay stress on any failure of defendant to preserve an objection to this testimony, this assignment of error is overruled on the broad ground that this testimony, when considered in the context of the entire evidence, was not of sufficient significance to constitute prejudicial error. "Where there is abundant evidence to support the main contentions of the state, the admission of evidence, even though technically incompetent, will not be held prejudicial when defendant does not affirmatively make it appear that he was prejudiced thereby or that the admission of the evidence could have affected the result." 3 Strong, North Carolina Index 2d, Criminal Law § 169, p. 135. Accord, *State v. Barrow*, 276 N.C. 381, 388, 172 S.E. 2d 512, 517 (1970); *State v. Williams*, 275 N.C. 77, 89, 165 S.E. 2d 481, 489 (1969), and cases cited.

Defendant assigns as error the portions of the court's instructions relating to the separate assault charge which define and apply "deadly weapon." We perceive no error in the challenged instructions.

[5, 6]  It is noted that the Superior Court has jurisdiction to try a misdemeanor which may be properly consolidated for trial

with a felony under G.S. 15-152. G.S. 7A-271 (a) (3). See *State v. Wall*, 271 N.C. 675, 157 S.E. 2d 363 (1967). Since the kidnapping and assault charges arose out of the same transaction and elements of the asault charge are essentials of the kidnapping charge, the consolidation of the assault and kidnapping charges was permissible under G.S. 15-152. There was no objection to the consolidation and we find no prejudice to defendant on account thereof.

[7] In the factual situation presented by the evidence, a finding that defendant was guilty of an assault was prerequisite to a finding that defendant was guilty of kidnapping. Thus, when the jury convicted defendant of kidnapping, their verdict necessarily included a conviction of assault. On the other hand, if the jury had found defendant not guilty of kidnapping, such verdict would not have precluded a verdict of guilty of assault with a deadly weapon or of simple assault. Since the jury found defendant guilty of kidnapping and of assault, and since the assault for which defendant was charged in the warrant is the identical assault referred to in the bill of indictment, and since the cases were consolidated for judgment, no possible harm has come to defendant on account of errors, if any, in the judge's instructions with reference to the definition of a deadly weapon when charging the jury in respect of the separate assault charge.

[8, 9] Defendant assigns as error the court's instructions to the effect that defendant's failure to testify was not to be considered against him. Although the instruction is meager and is not commended, we are constrained to hold that it meets minimum requirements. Ordinarily, it would seem better to give no instruction concerning a defendant's failure to testify unless such an instruction is requested by defendant. See *State v. Jordan*, 216 N.C. 356, 5 S.E. 2d 156 (1919).

[10] Prior to the enactment of Chapter 542, Public Laws of 1933, our statute (C.S. 4221) provided that a person convicted of kidnapping "may be punished in the discretion of the court, not exceeding twenty years in the state's prison." Seemingly as a result of the Lindburgh tragedy, the 1933 Act repealed C.S. 4221. The provisions of the 1933 Act, now codified as G.S. 14-39, include the following: "It shall be unlawful for any person . . . to kidnap . . . any human being, or to demand a ransom of any person . . . to be paid on account of kidnapping, or to hold any human being for ransom. . . . Any person . . .

violating . . . any provisions of this section shall be guilty of a felony, and upon conviction therefor, shall be punishable by imprisonment for life. . . . " Under our decisions, this statute leaves the term of imprisonment in the discretion of the court, imprisonment for life being the maximum punishment. *State v. Lowry, supra* at 541, 139 S.E. 2d at 874; *State v. Bruce, supra* at 184, 150 S.E. 2d at 224; *State v. Kelly,* 206 N.C. 660, 175 S.E. 294.

Since none of defendants's assignments disclose prejudicial error, the verdict and judgment will not be disturbed.

No error.