STATE OF NORTH CAROLINA v. BOYD LINVILLE WADE
— AND —
STATE OF NORTH CAROLINA v. CLARENCE R. BENNETT

No. 7125SC121

(Filed 28 April 1971)

1. Larceny § 7— sufficiency of evidence

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of larceny of copper bars where it tended to show that defendant was seen cutting one of the copper bars while on the owner's property, and a short time thereafter defendant was found with the stolen bars in a car driven by him.

2. Larceny § 7— sufficiency of evidence

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of larceny of copper bars where it tended to show that defendant was in a car driven by a codefendant when it was stopped and the stolen bars were discovered therein a short time after the theft occurred and a short distance from where the bars had been loaded into the car, and that the copper had a carbon dust about it and defendant had carbon dust on his clothing.

3. Criminal Law § 9— principal in second degree — instruction

In this prosecution for larceny of copper bars, the evidence supported the court's instruction that defendant could be found guilty as a principal in the second degree.

4. Criminal Law § 9— principals in first and second degrees — equal guilt

Principals in the first and second degrees are equally guilty.

APPEAL by defendants from McLean, Superior Court Judge, 10 August 1970 Session of BURKE County Superior Court.

Defendants were tried upon separate bills of indictment charging them with felonious breaking and entering, felonious larceny and receiving. At the conclusion of the State's evidence the court entered directed verdicts of not guilty on the counts of breaking and entering.

The State presented evidence tending to show the following: On a day prior to the alleged theft, copper bars belonging to Great Lakes Carbon Corporation in Burke County were dragged from the corporation's main compound under a chain link fence and to another portion of the corporation's property which was enclosed by a barbed wire fence. A deputy sheriff testified that he "staked out" the property on 12 July 1970. About 1:00 or 1:15 a.m. on that date, the deputy observed defendant Wade

and a Mr. Wright pulling a copper bar out and cutting on it. He heard other voices (male and female) in the close vicinity but he did not see anyone else. For about two and a half to three hours after 1:00 a.m. on that date, deputies kept under observation a Falcon automobile which was parked on Golf Course Road one mile or less from the carbon plant. During this period a Pontiac automobile drove up to the Falcon and stopped. Two people got out of the Pontiac, walked around the Falcon, opened and closed the trunk and got in the Falcon. The Pontiac then drove away. About two minutes later the Falcon started to drive away and was stopped by officers. A Mrs. Walters (sister of defendant Bennett) and Wright (who was seen cutting the copper) were in it.

The Pontiac automobile was stopped by an officer a short distance from where the Falcon had been located. Defendant Wade was driving the Pontiac and defendant Bennett was riding as a passenger. The rear seat had been pushed out of place and a copper bar was observed by the officer. Other copper bars were found in the car. The bars had carbon dust on them and Wade and Bennett both had carbon dust about their clothing.

An official of the Great Lakes Carbon Corporation placed the value of the recovered copper at about $400.

Defendant Bennett testified that on the night of 11 July 1970, Wade, who is Bennett's brother-in-law, agreed to take Bennett to his home in Lenoir in his Pontiac automobile. They were accompanied by Bennett's brother, Max Junior Bennett, who is now deceased. When the three men got to Morganton, Max Junior said "something about some stuff that he wanted to pick up while we were over here." They then went to the area where the Falcon was parked. Bennett's sister and Leon Wright were in the Falcon. Bennett and his companions joined them in drinking some beer. While Bennett was over to an embankment relieving himself, his brother, Wade, and Wright left in the Pontiac. They returned about twenty minutes later. Wright returned to the Falcon and Bennett returned to the Pontiac. As Bennett, his brother, and Wade drove off in the Pontiac, they noticed a parked deputy sheriff's car; whereupon, they pulled into a driveway and Max Junior Bennett got out and left through the woods. Bennett denied knowing that there was any copper in the car or having heard anyone say anything about copper. He also denied having had carbon dust on his clothing.

Wade testified that he helped Max Junior Bennett load the copper into the Pontiac. The copper had been hidden in some woods. Wade denied, however, that he knew the copper was not the property of Max Junior Bennett.

The jury returned verdicts of guilty of larceny of goods of the value of more than $200, and from judgments imposing prison sentences defendants appealed.

*Attorney General Morgan by Assistant Attorney General Briley and Assistant Attorney General Harris for the State.*

*Simpson & Martin by Dan R. Simpson for defendant appellants.*

GRAHAM, Judge.

Both defendants assign as error the denial of their motions for directed verdicts of not guilty made at the close of the State's evidence and renewed at the close of all the evidence.

It is elementary that upon a motion for judgment as of nonsuit in a criminal action, the evidence must be considered by the court in the light most favorable to the State, all contradictions and discrepancies therein must be resolved in its favor and it must be given the benefit of every reasonable inference to be drawn from the evidence. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679; *State v. Bruton,* 264 N.C. 488, 142 S.E. 2d 169; *State v. Thompson,* 256 N.C. 593, 124 S.E. 2d 728; *State v. Bass,* 255 N.C. 42, 120 S.E. 2d 580. Furthermore, all of the evidence actually admitted, whether competent or incompetent, including that offered by the defendants, if any, which is favorable to the State, must be taken into account and considered by the court in ruling upon the motion. *State v. Cutler, supra; State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833; *State v. Virgil,* 263 N.C. 73, 138 S.E. 2d 777.

[1] Defendant Wade was identified as one of two men pulling on one of the copper bars and cutting it. In order to get to the copper it was necessary that they enter onto the owner's property which was enclosed by a barbed wire fence. Wade admitted that he assisted in loading the copper bars which were hidden in some woods. Within a relatively short time thereafter he was found with the stolen property in a car being driven by him. This constituted plenary evidence to be passed upon by the jury on the question of his guilt of larceny.

[2]   The evidence with respect to Bennett is not as compelling. Nevertheless, when considered in the light most favorable to the State, we are of the opinion that it was also sufficient to be passed upon by the jury. Bennett admitted being in the company of Wade during the early morning hours of 12 July 1970 when the theft occurred. He was in the Pontiac automobile with Wade when it was stopped and the stolen property discovered therein. This was a short time after the theft had occurred and a short distance from where the property had been loaded into the Pontiac. Compare *State v. McCloud,* 276 N.C. 518, 173 S.E. 2d 753; *State v. Miller,* 271 N.C. 646, 157 S.E. 2d 335; *State v. Godwin,* 269 N.C. 263, 152 S.E. 2d 152; *State v. Nichols,* 268 N.C. 152, 150 S.E. 2d 21; *State v. Stroud* and *State v. Mason* and *State v. Willis,* 10 N.C. App. 30, 177 S.E. 2d 912. Furthermore, witnesses testified that the copper had carbon dust about it and Bennett had carbon dust on his clothing. Bennett offered testimony tending to explain his presence near the scene of the theft and exculpate him from responsibility. However, the credibility of this testimony was for the jury.

[3, 4]   Defendant Bennett also assigns as error the court's instruction that he could be guilty as a principal in the second degree. A person who is actually or constructively present at the place of a crime either aiding, abetting, assisting or advising in its commission, or is present for that purpose is a principal in the second degree. *State v. Benton,* 276 N.C. 641, 174 S.E. 2d 793. The evidence would support a finding that the defendant was either a principal in the first degree, or that he rendered aid to the actual perpetrator of the offense, though he never directly assisted in removing the copper bars from the property of the owner. If Bennett were a principal in the first or second degree he would be equally guilty. *State v. Benton, supra; State v. Allison,* 200 N.C. 190, 156 S.E. 547. This assignment of error is overruled.

No error.

Judges CAMPBELL and BRITT concur.