STATE OF NORTH CAROLINA v. CHARLIE WADE POWELL

No. 7121SC334

(Filed 23 June 1971)

1. Criminal Law § 84— illegal search — incompetency of evidence

Evidence is not rendered incompetent under the exclusionary rule set forth in G.S. 15-27 unless it is obtained in the course of an illegal search.

2. Criminal Law § 84; Searches and Seizures § 1— articles in plain view — seizure without warrant

No search warrant was required for the seizure of packets containing heroin which were in plain view of the officers after defendant, while on a public street, threw the packets behind him upon the approach of the officers.

3. Criminal Law § 162— evidence admitted without objection

The competency of evidence is not presented on appeal where it was admitted without objection or exception.

4. Criminal Law § 162— failure to object — motion to strike — discretion of court

When objection is not made in apt time to an improper question asked by counsel, a motion to strike a responsive answer is directed to the discretion of the trial judge except where the evidence is incompetent by virtue of a statute.

5. Criminal Law § 162— broadside motion to strike

Broadside motion to strike "everything relating to the testing" was properly denied where some of the evidence was competent.

6. Criminal Law § 169— admission of evidence — harmless error

Defendant was not prejudiced by the admission of testimony by a police officer, a non-expert, that a chemical test he performed on a substance which had been thrown down by defendant showed the presence of an opiate derivative, where the State did not rely upon the officer's testimony to identify the substance but offered expert testimony that it was heroin.

7. **Criminal Law § 130— motion for mistrial — newspaper article read by jurors**

   In this prosecution for possession of heroin, the trial court did not err in the denial of defendant's motion for mistrial made on the ground that during the progress of the trial two of the jurors read a newspaper article which revealed that defendant was then appealing a conviction for attempted armed robbery, where the court, after questioning the jurors, found that they would not be influenced or prejudiced by the newspaper article.

8. **Criminal Law § 114— instructions — expression of opinion**

   The trial court did not express an opinion in stating the contentions of defendant in this prosecution for possession of heroin.

9. **Criminal Law § 116— instruction on failure of defendant to testify**

   Absent a request, it is discretionary with the trial judge as to whether or not he instructs the jury on the failure of defendant to testify.

10. **Criminal Law § 116— instruction on failure of defendant to testify**

    Instruction that defendant may remain off the witness stand as he may elect "or as his counsel may advise him," while not approved, did not constitute prejudicial error.

ON *certiorari* as substitute for an appeal from *Johnston, Judge,* 26 October 1970 Session of Superior Court held in FORSYTH County.

Defendant was tried upon a bill of indictment reading as follows:

"THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Charlie Wade Powell late of the County of Forsyth on the 24th day of September, 1970 with force and arms, at and in the County aforesaid, did unlawfully, wilfully and feloniously possess narcotic drugs, to-wit, six glassine packets of heroin, in violation of the Uniform Narcotic Drug Act, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The evidence for the State tended to show that on 24 September 1970 at about 8:00 p.m., the defendant was sitting on a wall 3-½ to 4 feet high located on the north side of the 1500 block of East Fourteenth Street in the City of Winston-Salem. There were other people in the vicinity. Police officers of the City of Winston-Salem approached the defendant, and when they got within 10 feet of the right side of the defendant,

who was looking the other way, one of the officers said, "Police officers. We have a search warrant. Don't move." When this statement was made, the defendant, with his left hand, "flipped" or threw behind him "six glassine packets" which were bound together with a rubber band and contained the narcotic drug, heroin. The officer saw this and picked them up, and they were later introduced into evidence.

The evidence for the defendant tended to show that he knew police officers were in the vicinity. He did not throw anything behind him. When the police officers approached, they said, "Don't move, do I'll shoot you"; and he held his hands out and said, "I don't have anything." The defendant's four witnesses were present and did not see him throw anything behind him.

The jury returned a verdict of guilty as charged. From judgment of imprisonment, the defendant appealed to the Court of Appeals.

*Attorney General Morgan and Associate Attorney Ricks for the State.*

*Hatfield, Allman & Hall by James W. Armentrout for defendant appellant.*

MALLARD, Chief Judge.

Defendant has ten assignments of error. Assignments of error four and seven relate to the failure of the trial judge to allow the defendant's motions for judgment as of nonsuit. We hold that there was ample evidence to require submission of the case to the jury.

[1, 2] In defendant's first assignment of error, he contends that the trial judge erred in finding as a fact that the search warrant in possession of the officers as they approached the defendant was a valid search warrant; and in his second assignment of error, defendant contends that the trial judge committed error in admitting the heroin into evidence. The State contends that when the defendant spontaneously exposed the heroin to the police officers before the intended search could be had, he obviated the need for proof by the State of a valid search warrant and that the judge properly admitted the heroin into evidence. Evidence is not rendered incompetent under the ex-

clusionary rule now set forth in G.S. 15-27 unless it is obtained in the course of an illegal search. An illegal search is one made without a proper search warrant under conditions which require a search warrant. See *State v. Colson,* 1 N.C. App. 339, 161 S.E. 2d 637 (1968), and *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied,* 393 U.S. 1087, 21 L. Ed. 2d 780, 89 S.Ct. 876 (1969). The incriminating heroin in this case was not obtained in the course of an illegal search. The defendant did not give it to the officers because they had a search warrant. It was obtained when the defendant, in an apparent attempt to voluntarily dispose of it, unintentionally exposed it to the view of the officers. It is lawful and proper for an officer to seize an article in the discharge of his official duties without a warrant where the article is in plain view. *State v. Howard,* 274 N.C. 186, 162 S.E. 2d 495 (1968); *State v. Kinley,* 270 N.C. 296, 154 S.E. 2d 95 (1967); *State v. Simmons,* 10 N.C. App. 259, 178 S.E. 2d 90 (1970). The police officers stated that they had a search warrant, and while this may have motivated the defendant to attempt to surreptitiously dispose of the heroin, the evidential fact remains that the heroin was seen and obtained before a search could be made under the search warrant. The defendant and the officers were on a public street, and no search was involved or required to obtain the heroin which was in plain view of the officers from the time the defendant made his attempt to dispose of it until it was picked up by one of the officers. Under the peculiar circumstances of this case, the question of the validity of the search warrant does not arise and is not decided. The trial judge did not commit error in admitting the heroin into evidence.

After the six glassine packets found to contain heroin were identified and introduced into evidence, over defendant's objection, the following transpired during the examination of the arresting officer:

"Q. After you picked these items up, what did you do then?

A. I tested—

MISS WESTMORELAND: Objection.

THE COURT: Objection overruled.

EXCEPTION: Which is defendant's EXCEPTION NO. FOUR.

Q. Go ahead, sir.

A. I tested one pack of the white material to try to find positive results for opiate derivative.

Q. Opium derivative?

A. Yes, sir.

Q. Did you open one of these packages?

MISS WESTMORELAND: Your Honor, we would object and move to strike, on the grounds he is not an expert.

THE COURT: Well, he is just telling what he did.

THE SOLICITOR: I am not saying he is an expert.

THE DEFENDANT EXCEPTS TO THE IMPLIED OVERRULING OF HIS OBJECTION BY THE COURT. WHICH IS DEFENDANT'S EXCEPTION NO. FIVE.

I am not a chemist, or anything like that. This was strictly a preliminary test for probable cause to draw my arrest warrant. I ran the Marquis reagent test. I did that at this time. As to how you do it, you simply put the substance that you suspect to be an opiate derivative into a solution, add another solution, and then look for a color change. The color change was purple, which is positive for an opiate derivative. I then placed the defendant under arrest. I did this thing right on the spot."

[3] The defendant moved to strike "everything relating to the testing" which was denied. Defendant assigns the foregoing as error and contends that the police officer, who was not an expert, was permitted to testify as to the results of a chemical test he ran on these six glassine packets. It may be common knowledge that litmus paper when inserted into a solution will turn red to indicate its acidity and blue to indicate its alkilinity, but we do not think that it is common knowledge that a "Marquis reagent test" will cause a combination of two unknown solutions (insofar as this record discloses) to turn purple when an opiate derivative is added. Upon proper objection, the testimony of this witness, who was not an expert, with respect to his conclusion after he made the test should have been excluded. However, the testimony of the conclusion of the witness that the color change of this solution was purple and this "is positive for an opiate

derivative" was admitted without objection or exception, and its competency is therefore not presented on this appeal. The last objection shown on this record was to the question, "Did you open one of these packages?"; this question was proper and the answer was competent. The rule is stated in *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970), as follows:

> "When a specific question is asked, objection should be made before the witness has time to answer. However, when admissibility is not indicated by the question and only becomes apparent by the content of the answer, objection should be made immediately by a motion to strike the answer, or the objectionable part of it. (citations omitted.)
>
> Failure to object in apt time to incompetent testimony results in a waiver of objection so that admission of the evidence will not be reviewed on appeal unless the evidence is forbidden by statute or results from questions asked by the trial judge or a juror. (citations omitted)"

[4-6] The defendant's motion to strike "everything relating to the testing" was made after the witness had testified that he had taken the defendant to the police station and also, in detail, what he had done with the glassine packets and how he had marked them for identification. This motion to strike was not made in apt time. When objection is not made in apt time to an improper question asked by counsel, a motion to strike a responsive answer is directed to the discretion of the trial judge except where the evidence is incompetent by virtue of a statute. *State v. Perry,* 275 N.C. 565, 169 S.E. 2d 839 (1969). In addition, it was a broadside motion to strike; and inasmuch as some of the evidence (relating to what the witness did with the six glassine packets in connection with the testing before he arrested the defendant) was competent, the broadside motion to strike was properly denied. *State v. Fox,* 277 N.C. 1, 175 S.E. 2d 561 (1970). The State did not rely upon the police officer's test to identify the substance but offered a witness (stipulated by the defendant to be an expert in chemistry, specializing in the field of opiate derivatives) who testified that he tested and analyzed two of the packets in question and that they contained the narcotic drug, heroin. The defendant does not make it appear that he was prejudiced by the police officer's testimony as to the testing of the heroin or that a different result would have likely ensued if the evidence thereof had been excluded. *State v. Bar-*

---

---

*bour*, 278 N.C. 449, 180 S.E. 2d 115 (1971); *State v. Barrow*, 276 N.C. 381, 172 S.E. 2d 512 (1970); *State v. Williams*, 275 N.C. 77, 165 S.E. 2d 481 (1969); and 3 Strong, N.C. Index 2d, Criminal Law, § 169, p. 135.

[7] Defendant's fourth assignment of error is to the denial of his motion for a mistrial made in the absence of the jury on the grounds that a Winston-Salem newspaper published an article while this trial was in progress which contained "misleading" and "prejudicial" statements. The article bearing the title "Drug Possession Trial Opens" reads as follows:

"Charlie Wade Powell went on trial in Superior Court yesterday, charged with possession of heroin, a felony.

Powell, 37, pleaded not guilty.

His arrest came on the evening of Sept. 24, on 14th Street, near the corner of Jackson Avenue. Testimony indicated that several members of the police drug squad, backed up by a flock of heavily-armed uniformed officers, moved in on Powell as he sat with a group by the sidewalk.

Police drug agents said they seized several small bags of cut heroin near where Powell was sitting. They later searched his house at 2810 N. Patterson Avenue and confiscated weapons.

As court recessed for the night yesterday, defense witnesses were testifying, primarily concerning the circumstances of Powell's arrest.

Powell is free under an appearance bond during the appeal of a December 1969 conviction for attempted armed robbery, to the N. C. Court of Appeals. That conviction was the second under the same set of circumstances, stemming from an incident at the ABC store on Old Lexington Road in January 1969.

He was first convicted by a jury in Forsyth Superior Court, but won a new trial when the appeals court found that error had been committed during the original trial. It is the 12-to-20 year sentence handed down at his new trial, last December, that Powell is now appealing."

The judge inquired of the jury if any of them had read the article after the motion for mistrial was made. Two of them

indicated they had read the article, and three of them indicated they had read the headline. The judge said to the jury:

"Well, of course, this Court in observing the headlines would realize that there would certainly be nothing prejudicial in connection with the article insofar as the headlines are concerned, so the Court directs these remarks now to you two gentlemen who have read the article.

As we all know, the news media sometimes reports things correctly and sometimes they report them incorrectly; and, certainly, nobody ought to try any case as a juror on the strength of something that was said outside the courtroom by any person, the news media included, because that is the very purpose of a trial: to bring everything together in the presence of a jury and have it passed on in an orderly manner and under the law of the State."

After due inquiry of the jury, the court made the following finding based upon their response:

"The Court finds as a fact that the jury, after proper inquiry, retain an open mind in the case and will try the case solely under the evidence offered in the trial and will not be prejudiced in any manner by any news article that has appeared or that might appear in connection with the trial, and denies the motion of the defendant."

Defendant did not take the witness stand and contends that under the ruling in *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600, 86 S.Ct. 1507 (1966), this newspaper article read by two of the jurors, denied him due process of law. The factual situations in *Sheppard* and in *Marshall v. United States*, 360 U.S. 310, 3 L. Ed. 2d 1250, 79 S.Ct. 1171 (1959), are distinguishable. The newspaper article in the case at bar revealed that the prior conviction mentioned therein was not final but was being appealed. The court immediately and properly made inquiry of the jury upon defendant's motion. Each of the two jurors who had read the article stated that they were able to disabuse their minds of everything that they had read in the article and try the case solely on the evidence in the courtroom and the instructions of the court on the law. There is nothing in this record to indicate that the verdict of the jury was in any way affected by the information or statements contained in the newspaper article. In fact, the record shows that the trial judge, after talking

to the jurors, affirmatively found that the jurors would not be influenced or prejudiced by the newspaper article. On this record we hold that the defendant was not prejudiced by the publication of the newspaper article and that the trial judge correctly overruled the motion for a mistrial. See Annot. 3 L. Ed. 2d 2004.

The circumstances of this case point to the need for a trial judge to instruct jurors not to listen to any television or radio accounts or read any newspaper accounts concerning the case they are trying.

In defendant's sixth assignment of error he contends that the trial judge committed error in allowing the solicitor "to try to impeach" his character. This contention is without merit and requires no discussion.

[8] In his eighth assignment of error defendant contends that the trial judge, in stating the defendant's contentions, expressed an opinion. When the charge is construed as a whole, as we are required to do, no prejudicial error appears. This assignment of error directs attention to the desirability for the trial judge to abstain from or to minimize the giving of contentions in criminal cases. G.S. 1-180. See also concurring opinion in *State v. Stroud* and *State v. Mason* and *State v. Willis,* 10 N.C. App. 30, 177 S.E. 2d 912 (1970).

In the ninth assignment of error it is contended that the trial judge committed error in instructing the jury that the defendant need not testify because his attorney may have advised him not to do so. The judge said concerning this:

> "Now, Members of the Jury, the defendant has not testified in the case. Our law is emphatic that a person who is charged with crime may go upon the witness stand and testify in his defense or he may remain off the witness stand, as he may elect or as his counsel may advise him. Our law is equally emphatic that his failure to go upon the witness stand and testify in his defense shall not be considered by the jury to his prejudice."

[9] The first argument the defendant makes is that absent a special request, the court is not required to instruct the jury concerning his failure to testify; and since there was no request, the instructions emphasized the failure of the defendant to

exercise his right to testify or refrain from testifying under the provisions of G.S. 8-54. We do not agree. The greater weight of authority is that giving unrequested proper instructions relating thereto is not reversible error. See Annot., 18 A.L.R. 3d 1335 (1968). However, in *State v. Barbour, supra,* it is said:

> "Ordinarily, it would seem better to give no instruction concerning a defendant's failure to testify unless such an instruction is requested by the defendant."

Instructions concerning the failure of a defendant to testify relate to a subordinate feature of the case. Absent a request, it is discretionary with the trial judge as to whether he does or does not instruct the jury on a subordinate feature of a case. *State v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909 (1943); *State v. Roux,* 266 N.C. 555, 146 S.E. 2d 654 (1966). The rule is stated in 3 Strong, N.C. Index 2d, Criminal Law, § 113, as follows:

> "While the court is not required to charge on a subordinate feature of the case, nevertheless when it undertakes to do so, it becomes the duty of the court to charge thereon fully and accurately."

[10] The defendant also argues that the trial judge did not accurately instruct the jury and committed error in stating that the defendant may remain off the witness stand "as he may elect or as his counsel may advise him." The use of the word "emphatic" and the words "or as his counsel may advise him" are not approved, but we do not think they are prejudicial in this case. See *State v. Horne,* 209 N.C. 725, 184 S.E. 470 (1936). The better practice is for the trial judge to use the language employed in the statute (G.S. 8-54) without additions if there is a request for such instructions. *State v. McNeill,* 229 N.C. 377, 49 S.E. 2d 733 (1948).

The defendant's tenth assignment of error is a formal one and in view of what is said herein requires no further discussion.

In the trial we find no prejudicial error.

No error.

Judges PARKER and VAUGHN concur.