STATE OF NORTH CAROLINA v. JOHN ALBERT WILLIAMS

No. 7826SC966

(Filed 6 March 1979)

**1. Constitutional Law § 51— five and one-half year delay in trial—no denial of speedy trial**

Defendant was not denied his right to a speedy trial despite a five and one-half year delay between the offense charged and his trial where the evidence tended to show that a concerted effort was made to locate defendant and, when he was found in N.Y., to have him returned to N.C. for trial; defendant made no demand for speedy trial and in fact resisted extradition; and defendant failed to show that the delay was due to the State's wilfullness or neglect.

**2. Criminal Law § 158.1— matter not included in record—no error shown**

Defendant's contention that a witness's identification of him as the man in a poolroom who threatened to kill a third person should have been excluded was without merit, since the record did not disclose the substance of the hearing to suppress.

**3. Criminal Law § 116— defendant's failure to testify—instruction given without request—no error**

Though it is the better practice not to give an instruction on defendant's failure to testify in the absence of a request, the giving of such an instruction is not reversible error.

APPEAL by defendant from *Ervin, Judge*. Judgment entered 18 May 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 1 February 1979.

George Feaster was killed on 14 July 1972. Defendant was indicted for the murder in August 1975 and initially tried in February 1978. After a mistrial he was brought to trial a second time in May 1978 for second degree murder. The State called James Roseborough, who testified that he had known George Feaster, and that Feaster and a Bob Blue "looked like brothers." Feaster and Blue and some others lived in a house on South Irwin Street. On the night of 14 July 1972 Roseborough drove Feaster home and waited for him outside. About five seconds after Feaster went inside his house, "I heard something that went off, sounded like dynamite." Earlier that day Roseborough had been in the poolroom in his apartment building when defendant came in looking for Bobby Blue and said "tell the son-of-a-bitch, I'm going to kill him when I see him." On cross-examination Rosebor-

ough testified that he had glaucoma, and that in July 1972 he didn't wear glasses. The light was dimmer in the poolroom than in the courtroom. Asked why he didn't mention the incident until five years later, Roseborough answered that he had never seen the man any more, until the probable cause hearing in November 1977.

Lizzie Wilson, Feaster's neighbor on Irwin Street, testified that on the night of 14 July she heard a shotgun blast. "The noise came from Bob Blue's house. I saw [defendant] come out the back of Bob Blue's house after I heard the loud blast. . . . I saw a long object in [his] hand. . . ." The next day she was present at a fight between Feaster's brother, Sam, and the defendant, and "I heard the defendant say to Sam Feaster that he was sorry and that he killed the wrong man."

The county medical examiner testified that Feaster died of a shotgun wound. George Hamilton testified that he and defendant were friends. On the evening of 14 July defendant came by his house and talked about how Bob Blue had beaten him up. "His eye was all swollen up, and the side of his face was swollen, where he had been beaten. He had a shotgun with him. He said he was going to kill him if it was the last thing he did." Later that night Hamilton heard a gun blast. The next morning defendant passed by in a car with one of his friends and said, " 'I shot the wrong man last night.' " Hamilton too testified that Feaster and Blue "looked just alike."

Officer Kirkpatrick of the Charlotte police testified that he found a billfold containing a Social Security card bearing defendant's name outside Feaster's back door after the killing. Sam Feaster testified that he got in a fight with defendant the day after the killing, and "[w]hen I asked him why he killed my brother, he said he ain't mean to do it. He said he didn't know it was my brother."

Bobby Blue Hubert testified for defendant that he shared the house on Irwin Street with Feaster and another man. The night before the killing Hubert had put defendant in the trunk of his car and had planned to kill him, but had let him go. After the killing a girl named Hazel told Hubert (Bobby Blue) that defendant had killed Feaster, so Hubert and some others left and beat up

defendant. "When I was beating him up, he did not say that he had killed anybody. He never admitted to murdering my friend."

Defendant was found guilty of second degree murder and sentenced to 16-20 years. He appeals.

*Attorney General Edmisten, by Assistant Attorney General Nonnie F. Midgette and Associate Attorney Grayson G. Kelley, for the State.*

*Michael S. Scofield for defendant appellant.*

ARNOLD, Judge.

[1]  Defendant makes two arguments in support of his assertion that he was denied his constitutional right to a speedy trial. He first contends that the five and one-half year delay was both wilful and prejudicial.

The trial court found that defendant was in North Carolina on parole from New York at the time of Feaster's killing; that defendant was questioned and released on the day of the killing and left a week later for New York; that a warrant for defendant's arrest was issued on 20 July 1972, six days after the killing, and numerous unsuccessful attempts were made to locate the defendant and serve the warrant on him; that subsequent to march 1974 the North Carolina police learned that defendant was in the New York State Prison System and requested that he be returned to North Carolina for trial; that about 4 August 1975 defendant was indicted for Feaster's murder; that despite repeated requests from North Carolina the New York authorities were unable to find defendant in their prison system; that when he was found defendant fought extradition; that on 12 November 1977 a warrant was served on defendant in New York and he was returned to North Carolina for trial; and that defendant never made any demand for a speedy trial. From these findings the court concluded that defendant was not denied his right to a speedy trial.

The trial court ruled correctly. While the delay was long, the defendant has not met his burden of showing that the delay was due to the State's wilfulness or neglect. *State v. Spencer*, 281 N.C. 121, 187 S.E. 2d 779 (1972). Indeed, defendant made no show-ing that the facts were otherwise than those found. Nor did the

defendant make a written request for final disposition of the indictment under G.S. 15A-761, Art. III(a).

The standards for determining whether a defendant has been deprived of his constitutional right to a speedy trial are set out in *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972). We have applied the required balancing test and have determined that defendant was not denied his right to a speedy trial. The delay was a long one, but this factor is essentially a triggering mechanism which requires consideration of the other factors. There is no showing that the delay was due to either negligence or wilfulness on the part of the State. It appears that a concerted effort was made to locate defendant and, when he was found, to have him returned to North Carolina for trial. Defendant made no demand to be brought to trial, and in fact resisted extradition. The trial court found some prejudice to defendant in the unavailability of two alibi witnesses, but noted that there was no showing as to when the witnesses became unavailable, or that they were available at any earlier time.

Defendant also argues that he was denied his right to a speedy trial by the court's refusal to allow him to limit his testimony at the hearing on the motion to dismiss to his knowledge of the detainer that had been filed against him. Defendant cites no authority for this proposition, and we find the contention without merit. The court correctly ruled that defendant could take the stand "to testify to anything relating to this particular motion," but could not limit his testimony to just one point.

[2] Defendant next argues that Roseborough's identification of him as the man in the poolroom who threatened to kill Bobby Blue should have been excluded. It appears from the record that a voir dire hearing was held on the motion to suppress, but the substance of the hearing does not appear. Since the record is bare concerning the hearing there is no basis for this Court to conclude that the trial court's ruling on the motion was error. Defendant's counsel in preparing the record on appeal has failed to include the "evidence . . . necessary for understanding of all errors assigned." Rules of Appellate Procedure, Rule 18(c)(v). This assignment of error is unavailing.

Defendant contends that hearsay evidence was admitted, to his prejudice. Some of the statements to which he refers us were not hearsay. Others were hearsay, but their admission was cured by the immediate sustaining of an objection and motion to strike and an instruction to the jury to disregard the testimony. Thus, there was no prejudice to defendant.

[3] Error is also assigned to the trial court's comment in the charge to the jury on defendant's failure to testify. It is not the content of the instruction which he contests, but the fact that it was given in the absence of a special request by defendant. Though our courts have emphasized that it is better practice not to give such an instruction in the absence of a request, the giving of the instruction has not been found to be reversible error. *See State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115, *cert. denied* 404 U.S. 1023 (1971).

We have considered defendant's remaining assignments of error and conclude that defendant received a fair trial, free from prejudicial error.

No error.

Judges PARKER and WEBB concur.