STATE v. CARL LEONARD WILLIAMS AND EDDIE JOEL WILLIAMS

No. 661

(Filed 31 January 1969)

**1. Constitutional Law § 29;    Criminal Law § 135;    Jury § 7—    death penalty — exclusion of veniremen opposed to capital punishment**

While under the decision of *Witherspoon v. Illinois,* 389 U.S. 1035, a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction, that decision does not apply where the jury in a capital case recommends a sentence of life imprisonment.

**2. Constitutional Law § 29;    Jury § 3—    scruples against capital punishment**

Jurors are not necessarily biased in favor of conviction simply because they do not have conscientious or religious· scruples against capital punishment.

**3. Constitutional Law § 29;    Jury § 7—    right to unbiased jury — challenges for cause**

Each party to a criminal trial is entitled to a fair and unbiased jury and may challenge for cause a juror who is prejudiced against him, the right being not to select a juror prejudiced in his favor but to reject one prejudiced against him.

**4. Constitutional Law § 29;    Jury § 7—    exclusion of jurors having scruples against capital punishment — jury recommends life imprisonment**

In a prosecution for rape in which the jury returned a verdict of guilty as charged with recommendation of life imprisonment, defendant was not denied the right to an impartial jury on the issue of guilt by the exclusion for cause of prospective jurors who expressed conscientious or religious scruples against capital punishment, there being nothing in the record to indicate that any member of the jury was biased in favor of

conviction or otherwise prejudiced against defendants on account of his views on capital punishment and it not appearing that the jury included any juror who was challenged by defendant.

**5. Kidnapping § 1—— sufficiency of evidence**

In this prosecution for kidnapping, defendants' motions for nonsuit are properly denied where the State's evidence tends to show that defendants forced the prosecutrix' car off the road and forcibly put her in their car, that defendants drove the prosecutrix to another location where they raped her, and that defendants confined the prosecutrix in their custody continuously by force, threats of force, and fear from the time they forced her into their car until she was released.

**6. Rape § 5—— sufficiency of evidence**

In this prosecution for rape, defendants' motions for nonsuit are properly denied where all the evidence tends to show that defendants had sexual intercourse with the prosecutrix without her consent and that she submitted at a time and place when she was helpless to protect herself and her submission was induced by fear of death or serious bodily harm if she resisted.

**7. Rape § 6—— submission of lesser degrees of the crime of rape**

G.S. 15-169 and 15-170 are applicable only when there is evidence tending to show that the defendant may be guilty of a lesser offense.

**8. Criminal Law § 115—— submission of lesser degrees of the crime charged**

The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed.

**9. Rape § 6—— submission of issue of assault with intent to commit rape**

In this prosecution for rape, the court did not err in failing to instruct the jury that they could return verdicts of guilty of assault with intent to commit rape where all the evidence is to the effect that each defendant had actual sexual intercourse with the prosecutrix and that she, kidnapped, captive and helpless, submitted solely because fearful of death or serious bodily harm if she resisted.

**10. Criminal Law § 34—— evidence of other offenses**

Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime.

**11. Criminal Law § 34—— evidence that defendant was AWOL**

In a prosecution for kidnapping and rape, refusal of the court to strike from defendant's signed confession which was admitted into evidence the statement that defendant "went AWOL from Fort Hood, Texas,"

is not prejudicial error where defendant's AWOL status could be inferred from other evidence admitted without objection and his entire statement corroborates the testimony of the prosecutrix, it not appearing that the reference to his AWOL status could have affected the result of the trial.

**12. Criminal Law § 169—    admission of evidence — harmless and prejudicial error**

Where there is abundant evidence to support the main contention of the State, the admission of evidence which is technically incompetent will not be held prejudicial when defendant does not affirmatively make it appear that he was prejudiced thereby or that the admission of the evidence could have affected the result.

**13. Constitutional Law § 31;   Criminal Law §§ 76, 95—    joint trials — admission of confession implicating a codefendant**

Under the decision of *Bruton v. United States*, 391 U.S. 123, which is to be applied retroactively, the admission in a joint trial of a nontestifying defendant's extrajudicial confession implicating a codefendant violates the codefendant's right of confrontation secured by the Sixth Amendment and made obligatory on the states by the Fourteenth Amendment.

APPEAL by defendants from *Braswell, J.*, April 1, 1968 Criminal Session, Superior Court of CUMBERLAND County.

Defendants, in separate bills, were indicted for the rape of Rose Marie Hargrove on November 15, 1967. A third bill charged that defendants, on November 15, 1967, "did unlawfully, wilfully and feloniously and forcibly kidnap Rose Marie Hargrove. . . ."

The court, on account of the indigency of defendants, appointed counsel. James C. MacRae, Esq., was appointed to represent Carl Leonard Williams. Charles G. Rose, Jr., Esq., was appointed to represent Eddie Joel Williams.

Upon arraignment on said indictments, defendants entered pleas of not guilty. The cases were consolidated for trial.

The only evidence was that offered by the State. The essential portions thereof are summarized, except where quoted, below.

On November 15, 1967, Rose Marie Hargrove (Mrs. Hargrove), a member of the Women's Army Corps, and her husband, a member of the Army, were stationed at Fort Bragg, N. C. They lived in a trailer court in Fayetteville, N. C.

In the early morning of November 15th, Hargrove drove their car a distance of four or five miles to his duty station at Fort Bragg, arriving there at 4:30 a.m. Mrs. Hargrove went with him to drive the car back. She was to report for duty at 7:00 a.m.

While driving south on Reilly Road, Mrs. Hargrove stopped her

car in obedience to a red traffic light at the intersection of Reilly Road and Gruber Road. Reilly Road, in the area of this intersection, is a four-lane highway. In order to go straight (south) through this intersection, Mrs. Hargrove was in the westerly lane for southbound traffic. While waiting for the signal light to change, a car pulled up on her left side and stopped "about two or three feet away." Glancing over, she saw "these two colored men staring at (her)." When the light changed to green, she "pulled off right away in the direction (she) was going." Observing no headlights behind her, she thought the men had turned left into Gruber Road.

Leaving the intersection, Mrs. Hargrove drove south on Reilly Road at a speed of "about 50 or 60 miles an hour," although the posted speed limit in the Fort Bragg Reservation was forty-five. After traveling approximately two miles, and as she was leaving the Reservation at a speed of "about 60 miles an hour," she saw in her rear view mirror the headlights of another car that was "coming up behind (her) fast."

The overtaking car pulled up beside Mrs. Hargrove's car "as if to pass." Thinking it might be an M.P., she slowed down to "about 50 miles per hour." She then recognized the car beside her as the one she had seen at the Reilly-Gruber intersection. Eddie Joel Williams (Eddie), in the passenger seat, was looking at her. The car, operated by Carl Leonard Williams (Carl), turned into and struck Mrs. Hargrove's car. (Note: These men were complete strangers to her. Subsequent investigation disclosed their names.) She applied her brakes "very hard." Her car went over onto the shoulder and into the ditch and stopped. "(T)he wind was knocked out of (her)" and she was "stunned." When she looked up "(her) car was completely off the road in the ditch and their car was stopped to the left and in front of (her) vehicle." At that time, "the headlights were on, on both of (the) cars." No light was on *in* her car.

As to what then occurred, Mrs. Hargrove testified as follows:

"Almost immediately my door opened and Carl Williams slid in on the seat, put his arm around the back of my seat, and asked me if I was hurt and was I all right. I asked him what in the hell was the matter, was he drunk? With that he hit me in the mouth and nose with his left fist, and said shut up, you are coming with me. I smelled nothing on his breath. He hit me right in the mouth, my two front teeth cut my bottom lip, and I started to bleed pretty bad. The blow stunned me, it caught me by surprise.

"When Carl Williams said shut up, you are coming with me, I said no, no, and I grabbed on to the steering wheel. At this time he

leaned over and turned off the ignition and turned off the lights. I was holding on to the steering wheel and I said no, I am not, and he reached over and hit me again in the same spot. I started crying real hard and put my left hand over my face. At this time he got out of the car, grabbed hold of my left arm and pulled my hand loose and pulled me out of the car. When out of the car I was (standing) on the grass beside the car. At this time I was crying real hard and saying no, no, don't, you are going to jail for this, and Carl Williams said shut up, and pulled me around the back of his car. At this time I had my hand on my mouth because it was bleeding so bad, and he was pulling me by the other arm. During this time all Carl Williams said was shut up.

"His car was a two door car, and he opened the driver's side, pushed the seat forward with his left hand and pushed me in. Carl Williams then shut the door and went around and got in the other side, and Eddie Joel Williams drove away."

After driving approximately two miles south on the Reilly Road, Eddie, as directed by Carl, turned right therefrom onto the Cliffdale Road; and, after driving one and one-half to two and one-half miles thereon, turned therefrom onto a private dirt road. They traveled on this dirt road approximately five hundred feet and stopped (turning off all car lights) near a broken fence at a remote and deserted place in the woods. There, in the back seat of the Williams car (a Thunderbird with Texas license tag JWV-938) Carl first and then Eddie had sexual intercourse with Mrs. Hargrove. No help of any kind was available to Mrs. Hargrove at the scene of collision on Reilly Road or while traveling on Reilly Road or on Cliffdale Road or on the dirt road or where they stopped on the dirt road. All these locations were isolated and deserted.

En route to the isolated spot in the woods, Mrs. Hargrove, in obedience to Carl's command, was lying on the back seat of the car. She was crying "real hard," pleading that these men not kill her or hurt her, offering to get one hundred and fifty dollars for them if they would take her to her trailer in Fayetteville, attempting to dissuade them by saying her husband would soon be coming along the Reilly Road and would see her car and call the police. To her pleadings, they said, "No," Carl repeatedly telling her to "shut up" and striking her when she did not obey his command. Eddie said: ". . . shut up, all that crying won't do you any good." Carl said to Eddie: ". . . if she gets noisy, I'll get this knife out of the glove compartment." During this time, Carl, in vulgar phrase, made unmis-

takably clear his determination to have sexual intercourse with Mrs. Hargrove.

Upon arrival in the woods, Carl made Mrs. Hargrove take off her clothing, which consisted of an overcoat and gown. Notwithstanding her pleading, Carl and Eddie had sexual intercourse with her. In this dark, secluded area, alone with two strange, licentious and brutal men, she submitted without attempting to fight, kick, scratch or scream. Mrs. Hargrove testified: "I did not forcibly physically fight with either of them, and I did not resist because I was scared to death. I let them go ahead and do what they wanted to so I could get back alive, and not be left out in the woods." With reference to Carl, Mrs. Hargrove testified: ". . . I put my hands over my face, shut my eyes tight, clinched my teeth, and tried to think of something else." With reference to Eddie, Mrs. Hargrove testified: ". . . I closed my eyes, put my hands over my face, gritted my teeth and tried to think about something else."

Defendants took Mrs. Hargrove back to where her car was in the ditch, pushed her out of their car and left. It was then about 5:15 a.m.

Unable to find her car keys, she stood beside her car, "very much upset," "crying," "her hair and her general appearance was all mussed up," flagging approaching motorists. The second car stopped. One of the men in it waited with Mrs. Hargrove while the other(s) notified the sheriff's department. Soon thereafter a detective sergeant arrived. Mrs. Hargrove gave him a description of each defendant and of the car and gave him the license number of the car defendants were driving. The investigation proceeded apace. Defendants were placed under arrest about 12:00 noon and charged with rape and kidnapping.

The State offered massive corroborative evidence. This includes a statement made by Carl, stenographically transcribed, which was read and signed by him, which substantially corroborated the testimony of Mrs. Hargrove. On *voir dire,* Carl testified he made and signed this statement voluntarily and understandingly after he had been fully advised and had full knowledge of his constitutional rights.

There was evidence that Mrs. Hargrove, nineteen years of age, was married on November 4, 1967, some eleven days before the alleged kidnapping and rapes occurred; and that her general reputation was excellent.

The jury, for their verdicts, found each defendant (1) guilty of

kidnapping, and (2) guilty of rape with recommendation that the punishment be imprisonment for life. The following judgments were pronounced:

As to Carl Leonard Williams: In the kidnapping case (No. 67-21967-A), judgment imposing a prison sentence of forty years was pronounced. In the rape case (No. 67-21970), the judgment pronounced imposed a sentence of imprisonment for the term of his natural life, this sentence to begin at the expiration of the sentence pronounced in No. 67-21967-A.

As to Eddie Joel Williams: In the kidnapping case (No. 67-21967-A), judgment imposing a prison sentence of thirty-five years was pronounced. In the rape case (No. 67-21968), the judgment pronounced imposed a sentence of imprisonment for the term of his natural life, this sentence to begin at the expiration of the sentence pronounced in No. 67-21967-A.

Each defendant excepted and appealed.

Orders were entered (1) permitting defendants to appeal *in forma pauperis,* (2) appointing the trial counsel of each defendant to perfect his appeal, and (3) providing that Cumberland County pay for the transcript and other documents incident to the appeals.

Based on one statement of assignments of error, a brief was filed in behalf of each defendant.

*Attorney General Bruton and Deputy Attorney General McGalliard for the State.*

*MacRae, Cobb, MacRae & Henley for defendant appellant Carl Leonard Williams.*

*Charles G. Rose, Jr., for defendant appellant Eddie Joel Williams.*

BOBBITT, J.

Defendants assign as error the action of the court "in excusing from the jury those jurors who expressed the personal conviction that they were opposed to capital punishment." This assignment is based solely on the following statement in the agreed case on appeal: "In the selection of the jury the court excused from the jury all those jurors who stated that they were opposed to Capital Punishment. EXCEPTION No. 1." Defendants rely upon *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. ed. 2d 776, 88 S. Ct. 1770.

A jury had convicted Witherspoon of murder *and had fixed his*

*penalty at death.* In granting *certiorari,* the Supreme Court of the United States limited consideration to the following question: "Whether the operation of the Illinois statute providing that the State could challenge for cause all prospective jurors who were opposed to, or had conscientious scruples against, capital punishment deprived the petitioner of a jury which fairly represented a cross section of the community, and assured the State of a jury whose members were partial to the prosecution on the issue of guilt or innocence, in violation of the petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution." *Witherspoon v. Illinois,* 389 U.S. 1035, 19 L. ed. 2d 822, 88 S. Ct. 793.

[1] In *Witherspoon,* Mr. Justice Stewart, expressing the views of five members of the Court, stated: "Specifically, we hold that *a sentence of death* cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally *be put to death* at the hands of a tribunal so selected." (Our italics.) 391 U.S. at 521-523, 20 L. ed. 2d at 784-785, 88 S. Ct. at 1776-1777.

Directly pertinent to the present case, Mr. Justice Stewart stated: "We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a *per se* constitutional rule requiring the reversal of every conviction returned by a jury selected as this one was. . . . It has not been shown that this jury was biased with respect to the petitioner's guilt." 391 U.S. at 517-518, 20 L. ed. 2d at 782-783, 88 S. Ct. at 1774-1775. Footnote 21 of the majority opinion includes the following: "Nor does the decision in this case affect the validity of any sentence *other* than one of death. Nor, finally, does today's holding render invalid the *conviction,* as opposed to the *sentence,* in this or any other case." A separate opinion of Mr. Justice Douglas, who considered the basis of decision too narrow, epitomizes the holding of the majority in these words: "Although the Court reverses as to penalty, it declines to reverse the verdict of guilt rendered by the same jury." 391 U.S. at 531, 20 L. ed. 2d at 790, 88 S. Ct. at 1782.

It is noted that Mr. Justice Black, Mr. Justice Harlan and Mr. Justice White dissented from the decision in *Witherspoon.*

In *State v. Bumper* (erroneously designated *Bumpers*), 270 N.C. 521, 155 S.E. 2d 173, the jury returned a verdict of guilty of rape with recommendation that the punishment be imprisonment for life. Upon this verdict the court, in compliance with the mandate of G.S. 14-21, pronounced judgment imposing a sentence of life imprisonment. This Court found "No error." In *Bumper v. North Carolina*, 391 U.S. 543, 20 L. ed. 2d 797, 88 S. Ct. 1788, the Supreme Court of the United States reviewed our decision on the two grounds on which it was attacked by *Bumper*, namely, (1) that his constitutional right to an impartial jury had been violated because the prosecution was permitted to challenge for cause all prospective jurors who stated their opposition to capital punishment, and (2) that a rifle introduced in evidence against him was obtained by a search made in violation of the Fourth and Fourteenth Amendments. Our decision was reversed on the ground the search was unlawful and therefore the rifle should not have been admitted in evidence.

With reference to Bumper's claim that his constitutional right to an impartial jury had been violated, Mr. Justice Stewart, expressing the views of five members of the Court, said: "In *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. ed. 2d 776, 88 S. Ct. 1770, decided today, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been removed for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. Our decision in *Witherspoon* does not govern the present case, because here the jury recommended a sentence of life imprisonment. The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. (Citations.) We cannot accept that contention in the present case. The petitioner adduced no evidence to support the claim that a jury selected as this one was is necessarily 'prosecution prone,' and the materials referred to in his brief are no more substantial than those brought to our attention in *Witherspoon*. Accordingly, we decline to reverse the judgment of conviction upon this basis." 391 U.S. at 545, 20 L. ed. 2d at 800-801, 88 S. Ct. at 1790.

The foregoing is quoted with approval by Higgins, J., in *State v. Peele*, 274 N.C. 106, 113-114, 161 S.E. 2d 568, 573-574, *certiorari* denied, 393 U.S. 1042, 21 L. ed. 2d 590, 89 S. Ct. 669, which, like *Bumper*, did not involve a death sentence and is direct authority in this jurisdiction for decision herein.

In *Bumper,* Mr. Justice Douglas, concurring in result, expressed the view that reversal should have been based also on the ground Bumper had been denied "the right to trial on the issue of guilt by a jury representing a fair cross-section of the community" since the record showed "that 16 of 53 prospective jurors were excused for cause because of their opposition to capital punishment."

The views of the majority in *Crawford v. Bounds,* 4 Cir. 1968, 395 F. 2d 297, seemingly are in accord with those expressed in the dissenting opinion of Mr. Justice Douglas in *Bumper.* It is noted that the Supreme Court of the United States in *Bounds v. Crawford,* 393 U.S. 76, 21 L. ed. 2d 62, 89 S. Ct. 234, vacated the judgment and remanded the case to the Court of Appeals "for further consideration in the light of *Witherspoon v. Illinois,*" *supra,* "and for consideration of the other constitutional questions raised in the case."

**[2]** Here, as in *Bumper* and *Peele,* death sentences are not involved. In accord with *Witherspoon, Bumper* and *Peele,* we reject the idea the jurors are biased in favor of conviction simply because they do not have conscientions or religious scruples against capital punishment.

**[3]** "Each party to a trial is entitled to a fair and unbiased jury. Each may challenge for cause a juror who is prejudiced against him. A party's right is not to select a juror prejudiced in his favor, but to reject one prejudiced against him." *State v. Peele,* 274 N.C. at 113, 161 S.E. 2d at 573. See also, *State v. Spence,* 274 N.C. 536, 538, 164 S.E. 2d 593, 594. In *State v. Peele, supra,* Higgins, J., in his opinion for the Court, cites federal cases substantially in accord with the stated North Carolina rule.

**[4]** Nothing in the record before us indicates that any member of the jury which tried defendants was biased in favor of conviction or otherwise prejudiced against defendants on account of his views on capital punishment or otherwise. Nor does it appear that the jury included any juror who was challenged by defendants. In accord with the decision of the Supreme Court of the United States in *Bumper,* and our own decision in *Peele,* we hold the record fails to show prejudice to defendants in respect of the manner in which the jury was selected. Although distinguishable factually in certain particulars, 1968 decisions generally in accord with the views expressed herein include the following: *Commonwealth v. Wilson,* 431 Pa. 21, 30, 244 A. 2d 734, 739; *Commonwealth v. Sullivan,* 239 N.E. 2d 5, 11 (Mass.); *People v. Speck,* 242 N.E. 2d 208, 225-228 (Ill.).

At the close of the evidence, each defendant moved for judgment

as in case of nonsuit and excepted to the court's denial thereof. Assignments of error based on these exceptions are without merit.

[5] The only reasonable inference that may be drawn from the evidence is that Mrs. Hargrove did not accompany defendants voluntarily at any time or under any circumstances but that she was forcibly put in their car by defendants and confined in their custody continuously by force, threats of force and fear from the time and point of collision on the Reilly Road until she was brought back and left there. Hence, there was ample evidence to support the convictions of kidnapping in violation of G.S. 14-39. *State v. Bruce,* 268 N.C. 174, 182-183, 150 S.E. 2d 216, 223, and cases cited.

[6] The only reasonable inference that may be drawn from the evidence is that Mrs. Hargrove did not consent that either of defendants have sexual intercourse with her. On the contrary, she pleaded persistently that they refrain from forcing her to do so. All the evidence tends to show she submitted at a time and place when she was helpless to protect herself and her submission was induced by fear of death or serious bodily harm if she resisted. Hence, in accordance with legal principles recently stated by Parker, C.J., in *State v. Primes,* 275 N.C. 61, 67, 165 S.E. 2d 225, 229, there was ample evidence to support the convictions for rape.

The portion of the charge to which defendants excepted is in full accord with the legal principles stated in *State v. Primes, supra,* and cases cited. The assignment of error based on this exception is without merit.

Defendants excepted to the court's failure to instruct the jury they could return a verdict of guilty of an assault with intent to commit rape. The statutes pertinent to a consideration of the assignment of error based on these exceptions are quoted below.

G.S. 15-169 provides: "On the trial of any person for rape, or any felony whatsoever, when the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted, *if the evidence warrants such finding;* and when such verdict is found the court shall have power to imprison the person so found guilty of an assault, for any term now allowed by law in cases of conviction when the indictment was originally for the assault of a like character." (Our italics.)

G.S. 15-170 provides: "Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less de-

gree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime."

**[7, 8]**    G.S. 15-169 and G.S. 15-170 are applicable *only when there is evidence* tending to show that the defendant may be guilty of a lesser offense. *State v. Jones,* 249 N.C. 134, 139, 105 S.E. 2d 513, 516, and cases cited. "The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547.

**[9]**    All the evidence is to the effect that each defendant had actual sexual intercourse with Mrs. Hargrove and that she, kidnapped, captive and helpless, submitted solely because fearful of death or serious bodily harm if she resisted. There is no particle or trace of evidence that Mrs. Hargrove at any time willingly permitted either defendant to have sexual intercourse with her or willingly remained in the presence of defendants. There being no evidence that would warrant a verdict of guilty of the included crime of assault with intent to commit rape, the court properly refused to instruct the jury with reference to such verdict.

**[11]**    Defendants excepted to and assigned as error the court's failure to strike from the signed transcript of Carl's statement the following: "I went AWOL from Fort Hood, Texas on 18 October 1967, along with Eddie Joel Williams." For reasons stated below, a new trial must be awarded Eddie. Hence, we consider this exception with specific reference to the case against Carl.

Immediately after the quoted statement, Carl related where he was between October 18, 1967, when he left Colleen, Texas, until his arrival "about 2:00 or 2:30 a.m. on the 15th of November, 1967," in the Fort Bragg area. There was evidence, admitted without objection, that Carl, prior to his arrest on November 15th, was asked by an M.P. for his ID card, driver's license and registration card; that he produced his ID card but failed to produce a driver's license or a registration card; and that, in response to an inquiry as to his unit, gave "a unit which was a Fort in Texas." Carl was wearing civilian clothes.

**[10]**    The rule upon which Carl bases this contention is well stated as follows: "Evidence of other offenses is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it

tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." Stansbury, North Carolina Evidence, Second Edition, § 91. The general rule and the exceptions thereto are set forth fully, with copious citations, in *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364.

[11]    Whether Carl was AWOL, a violation of the Uniform Code of Military Justice, 10 U.S.C.A. § 886, has no significant relationship to whether he committed the crimes for which he was indicted, tried and convicted. Conceding, *arguendo,* it would have been technically correct to strike this particular sentence from Carl's statement, the failure to do so cannot be considered prejudicial. It would seem his AWOL status could be inferred clearly from evidence admitted without objection. In any event, we cannot conceive that the jurors could have been affected to any extent by this reference in Carl's statement that he went AWOL on October 18, 1967, from Fort Hood, Texas. His entire statement corroborates and in large measure specifically confirms the testimony of Mrs. Hargrove.

[12]    "Where there is abundant evidence to support the main contentions of the state, the admission of evidence, even though technically incompetent, will not be held prejudicial when defendant does not affirmatively make it appear that he was prejudiced thereby or that the admission of the evidence could have affected the result." 3 Strong, North Carolina Index 2d, Criminal Law § 169, p. 135. Recent decisions affirming and applying this rule include the following: *State v. Temple,* 269 N.C. 57, 66, 152 S.E. 2d 206, 212; *Gasque v. State,* 271 N.C. 323, 340, 156 S.E. 2d 740, 752. Defendant's (Carl's) assignment of error is without substance and hence without merit.

Consideration of Carl's appeal fails to disclose prejudicial error.

[13]    There remains for consideration the impact on Eddie's conviction of the decision on May 20, 1968, by the Supreme Court of the United States, in *Bruton v. United States,* 391 U.S. 123, 20 L. ed. 2d 476, 88 S. Ct. 1620, which, overruling prior decisions, held that the extrajudicial confession of a defendant who did not testify at trial, which confession incriminated his codefendant, was not admissible in evidence notwithstanding the presiding judge instructed the jury explicitly that it was admitted and to be considered only against the confessing defendant. In *Roberts v. Russell,* 392 U.S. 293, 20 L. ed. 2d 1100, 88 S. Ct. 1921, the Supreme Court held that *Bruton* is to be applied retroactively. In *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492, where the prior rule in this jurisdiction and in the federal courts and the changes wrought by *Bruton* are fully dis-

cussed by Sharp, J., it is held that *Bruton* "is binding upon this Court. . . ." Accord: *State v. Parrish,* 275 N.C. 69, 165 S.E. 2d 230.

Eddie was tried and convicted in April, 1968, prior to the decision in *Bruton.* The record does not show Eddie's counsel objected to the admission of any portion of Carl's confession other than the sentence relating to their status as AWOL. The record contains no instruction by the presiding judge that Carl's confession was admitted only as against Carl. Nor does the record show Eddie's counsel requested that the court give such instruction. While appropriate at that time, such instruction, when tested by *Bruton,* would have been of no avail.

The assignments of error, in referring to Carl's confession, are concerned only with the sentence relating to their AWOL status. Moreover, the brief filed in behalf of Eddie attacks the admissibility of Carl's statement solely on that ground.

Notwithstanding the foregoing, under the law as established in *Bruton,* Eddie has been denied a constitutional right, namely, "the Sixth Amendment's right of an accused to confront the witnesses against him," this being a fundamental right made obligatory on the States by the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 403, 13 L. ed. 2d 923, 926, 85 S. Ct. 1065, 1068; *State v. Fox,* 274 N.C. at 291, 163 S.E. 2d at 502. Consequently, for prejudicial error against Eddie on account of the admission of the confession of Carl, Eddie must be and is awarded a new trial.

As to Carl Leonard Williams: No error.

As to Eddie Joel Williams: New trial.