STATE OF NORTH CAROLINA v. REGINALD RENARD LAMPKINS

No. 11

(Filed 12 March 1975)

1. **Constitutional Law § 29; Criminal Law § 135; Jury § 7— death penalty views — challenge for cause**

   The trial court in a rape case did not err in allowing the State's challenge for cause to two prospective jurors on account of their death

penalty views where one juror stated on *voir dire* that she does not believe in capital punishment, that her opposition thereto would affect her verdict in this case and that if the State presented evidence which, in her opinion, proved beyond a reasonable doubt that defendant committed the crime of rape, "capital punishment would have a bearing even in the face of that," and where the second juror stated that he would not return a verdict of guilty of rape, which would carry the death penalty, regardless of what the evidence was.

**2. Rape § 5— sufficiency of evidence**

The State's evidence was sufficient for the jury in a rape prosecution where it tended to show that defendant seized the prosecutrix by the arm, pulled her to a place to which she did not want to go, threw her to the ground, choked her, bumped her head, removed her clothing and had sexual intercourse with her against her will.

**3. Criminal Law § 87; Witnesses § 1— witness not on list furnished by State**

The trial court in a rape case did not err in permitting the State to present a rebuttal witness whose name did not appear on the list of witnesses for the State given to defendant's counsel by the solicitor before the trial began since the solicitor was not aware the witness had knowledge of any matter material to the case until a conversation between the witness and his wife was overheard in the courthouse hall after the trial commenced, there is nothing to indicate that the solicitor withheld the name of the witness from defendant's counsel in bad faith, and defendant in a criminal case is not entitled to a list of the State's witnesses.

**4. Rape § 6— failure to submit lesser offenses**

The trial court in a rape case did not err in failing to submit the lesser included offenses of assault with intent to commit rape and assault on a female where all the State's evidence tended to show commission of the crime of rape and defendant's evidence was that he never had sexual intercourse with the prosecutrix and that he did not touch her in a manner constituting an assault.

**5. Rape § 6— failure to submit lesser offenses — disbelief of part of testimony**

The mere fact that the jury might believe part but not all of the testimony of the prosecutrix in a rape case is not sufficient to require the court to submit to the jury the issue of defendant's guilt or innocence of a lesser offense than that which the prosecutrix testified was committed.

**6. Criminal Law § 135; Rape § 7— Act dividing rape into two degrees — nonretroactivity**

The Act dividing the crime of rape into two degrees and providing that the punishment for second degree rape shall be imprisonment for life or for a term of years is not retroactive and is not applicable to a crime of rape committed prior to its enactment on 8 April 1974. Ch. 1201, Session Laws of 1973.

Chief Justice SHARP and Justices COPELAND and EXUM dissenting as to the death penalty.

APPEAL by defendant from *Armstrong, J.,* at the 7 January 1974 Criminal Session of FORSYTH.

By an indictment, proper in form, the defendant was tried on the charge that on 13 November 1973 he raped Rosa Mae Barr. The jury found him guilty as charged and he was sentenced to death.

It is not disputed that the defendant, 17 years of age, and Rosa Mae Barr, 22 years of age, not previously acquainted, were guests at a party in the home of Barbara Ann Garner for some two hours on the evening of 13 November 1973; they danced together one or more times, she drank alcoholic beverages, sat in the defendant's lap, kissed him and "flirted" with him; about 11:30 p.m., after the departure of the other guests, she left the house, announcing her intention to walk home; and immediately, at the request of the hostess that he see Rosa Mae Barr home, the defendant also left the house, overtook and walked with her.

Rosa Mae Barr testified to the following effect: When the defendant overtook her after they left Barbara Ann Garner's house, she told him she was trying to find a telephone booth in order to call a taxi. He said he would show her the way to a telephone booth. He started to take her along a pathway between two houses. When she protested, he grabbed her arm and started pulling her along the path. She screamed. He then choked her, told her to "shut up" and kept pulling and choking her, holding her by one arm and by her neck. Reaching a grassy area, he shoved her, jerked her coat off, threw her to the ground, tore her coat, bumped her head very hard, choked her and told her to "be quiet before he killed" her. He pulled her underclothing off and had sexual intercourse with her against her will. Thereupon, he refused to let her return to Barbara Ann Garner's house, insisted that he was going to show her where a telephone booth was so that she could call a taxi. They walked to a telephone booth together and he called a taxi with coins taken from her pocketbook. When a taxi arrived she was screaming and crying. The driver called the police who took her to the hospital. She did not consent to the defendant's having intercourse with her and "resisted by trying to fight, push, get up and run," but he kept choking and holding her. He did not use any kind of weapon. She was afraid of him. She had been drinking but was not drunk. When the taxi came in response to his call, the defendant said, "Here comes the cab," and thereupon "may have left and went away."

The State offered medical evidence to the effect that Rosa Mae Barr had had sexual intercourse within a few hours prior to her arrival at the hospital, that she was "crying and upset," and there was grass in the area of her private parts.

Other witnesses for the State testified, in effect, that her coat was torn at the shoulder prior to the party but not as badly as it was at the time it was offered in evidence at the trial. When they were observed at the telephone booth, the defendant was acting normally but she was "walking up and down" and "looked hysterical." Nothing about her actions caused this observer, who knew the defendant, to think she was in trouble or was trying to run away. The defendant requested this witness, who was in an automobile, to take Rosa Mae Barr to her home but the witness told him he could not do so. When the taxi driver arrived, he noticed "a man and a woman coming down the street about 20 or 30 feet away from the phone booth," the man having his arm around the woman's neck. Nothing in their appearance caused the driver to believe the woman was in trouble. The woman crossed the street and got into the cab. When she asked the driver if he knew her companion, the driver looked back but the man had disappeared. She then told the driver that the man had raped her and the driver called the police. She then appeared to have been in a scuffle or fight and had grass on her. When she got in the cab she was calm and did not appear to be drunk, but while waiting in the cab for the arrival of the police, she was screaming and "almost out of her mind." The police arrived eleven minutes after midnight and took her to the hospital. She appeared to be sober but was "screaming and hysterical," and said she had been raped. The sleeve was torn out of her coat.

The defendant, a witness in his own behalf, testified to the following effect: At the party Rosa Mae Barr was drinking alcoholic beverages of various kinds and smoking "reefers." They danced together. She sat in his lap, kissed him and "flirted" with him. He did not smoke any "reefers" and drank no alcoholic beverage at the party except a part of one bottle of beer. When the hostess asked him "to see Rosa home," he said that he would do so and followed Rosa Mae Barr out of the house. She was then angry with the hostess and the "boyfriend" of the hostess and was crying. The defendant offered to "walk her to the phone booth." They walked together to the phone booth and he called a taxi. She remained outside the phone booth, "walking

up and down." He asked a friend (above mentioned), who passed in an automobile, to take her home but the friend "had something else to do and left." At that time another friend of the defendant came up and told him that his mother wanted him, so he went on home and went to sleep. He testified positively, "I did not touch Rosa after leaving the house," and "I have never had intercourse with Rosa Barr." The first time he saw her was at the party and when he left her at the phone booth she was not "hollering and screaming."

The defendant's friend, who came up and told the defendant his mother wanted him to come home, testified he observed Rosa Mae Barr "on the sidewalk pacing or walking." She was not crying or upset. He and the defendant left immediately.

Over objection, the court permitted the State to call in rebuttal Oliver Lee Montgomery. The basis of the objection was that this witness was not included in the list of witnesses for the State given to the defendant's counsel by the Solicitor before the trial began. He testified: He was arrested on 23 November and was confined in the same cell block with the defendant. The witness was released on bond on 14 December and was out on bond at the time of the defendant's trial. While in jail together, they discussed the charges against them and the defendant said that he was charged with rape, that he did not rape the girl but had had intercourse with her and she became angry with him because he would not pay her. The witness testified that his own case was supposed to be tried on the day preceding his testimony in the present case and, while waiting in the hall of the courthouse, he and his wife were talking and were overheard by the Solicitor, who asked the witness if the witness knew anything about this case and if he would testify. The witness told the Solicitor he was afraid that if he did and then was put in the same cell block with the defendant something would happen to him or something would be done to his wife while the witness was "pulling time." The Solicitor replied that "the only thing he could promise me was to help me not to be in the same cell block." The Solicitor promised the witness nothing in return for his testimony and no officer or anyone else promised the witness anything.

*Attorney General Robert Morgan and Assistant Attorney General Ralf F. Haskell for the State.*

*Annie Brown Kennedy for defendant.*

LAKE, Justice.

[1]　The defendant's Assignment of Error No. 1 is to the allowance of the State's challenges for cause to two prospective jurors on account of their views concerning the imposition of the death penalty. The record discloses that of the 31 prospective jurors examined, only seven expressed opposition to the imposition of the death penalty. Of these, three were passed by the State and served on the jury which convicted the defendant. Two were challenged peremptorily by the State. Two, Mr. Godfrey and Mrs. Edwards, were challenged by the State for cause.

Mrs. Edwards stated on voir dire that she does not believe in capital punishment, that her opposition thereto would "affect" her verdict in this particular case and that if the State presented evidence which, in her opinion, proved beyond a reasonable doubt that the defendant did commit the crime of rape, "capital punishment would have a bearing even in the face of that." The Solicitor having challenged Mrs. Edwards for cause, defendant's counsel stated to the court that counsel did not "make any point about it." Thereupon, the court excused this prospective juror and the record shows no exception to that ruling. . .

Mr. Godfrey stated, in response to a question by the Court, after the Solicitor challenged him for cause, that he "would not return a verdict of guilty of rape, which would carry the death penalty, regardless of what the evidence was." The Solicitor's challenge for cause was thereupon allowed and the record shows no exception to the ruling.

Both of the foregoing challenges for cause were properly sustained under the ruling of the Supreme Court of the United States in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20. L.Ed. 2d 776. The sustaining of these two challenges for cause was in accord with our decisions in numerous cases decided since the Witherspoon case. *State v. Jarrette,* 284 N.C. 625, 639, 202 S.E. 2d 721; *State v. Anderson,* 281 N.C. 261, 188 S.E. 2d 336; *State v. Watson,* 281 N.C. 221, 188 S.E. 2d 289; *State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652; *State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671; *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572; *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487.

The State challenged peremptorily six prospective jurors who stated they had no objection to the death penalty and challenged, for a different cause, one other prospective juror. The

defendant challenged peremptorily seven prospective jurors and challenged no juror or prospective juror for cause.

There is no merit in this assignment of error.

[2]  The defendant's Assignments of Error No. 2 and No. 9 are directed to the overruling of the defendant's motions for judgment of nonsuit at the close of the State's evidence and at the close of all the evidence. It is elementary that, upon a motion for judgment of nonsuit, the evidence for the State is taken to be true and the State is entitled to every reasonable inference which may be drawn therefrom, contradictions and discrepancies in the State's evidence are disregarded and the evidence of the defendant in conflict with that of the State is not taken into consideration. Strong, N. C. Index 2d, Criminal Law, § 104, and the numerous cases there cited. So considered, the evidence for the State is sufficient to carry to the jury the question of the defendant's guilt or innocence on the charge of rape. These assignments of error are without merit.

[3]  The defendant's Assignment of Error No. 3 is to the ruling of the Court permitting the State to call Oliver Montgomery as its witness, in rebuttal. The basis of this assignment of error is that the name of this witness was not given to the defendant's counsel by the Solicitor as a prospective witness for the State. Trial of this case began 15 January 1974 and was concluded 18 January 1974. Montgomery testified just prior to the end of the presentation of evidence. Obviously, he could not have testified prior to 17 January, the third day of the trial. The testimony of this witness, as summarized in the foregoing statement of facts, shows that the Solicitor was not aware that this witness had knowledge of any matter material to this case until a conversation between the witness and his wife was overheard in the hall of the courthouse the day before the witness was called to the stand; that is, after the trial of the case commenced. The defendant does not contend that the Solicitor withheld the name of this witness from the defendant's counsel in bad faith and there is nothing whatever to indicate that such was the case. In *State v. Hoffman*, 281 N.C. 727, 734, 190 S.E. 2d 842, Justice Sharp, now Chief Justice, said:

> " 'The common law recognized no right of discovery in criminal cases.' *State v. Goldberg*, 261 N.C. 181, 191, 134 S.E. 2d 334, 340 (1964). In the absence of a statute requiring the State to furnish it, the defendant in a criminal case

is not entitled to a list of the State's witnesses who are to testify against him. [Citations omitted.] There is no such statute in this State."

There is no merit in this assignment of error.

[4]  The defendant's Assignment of Error No. 11 is to the failure of the Court to submit to the jury the question of the defendant's guilt or innocence of lesser offenses included within the charge of rape—assault with intent to commit rape and assault on a female.

The testimony of the prosecutrix, Rosa Mae Barr, was that the defendant, by force and against her will, seized her by the arm, pulled her to a place to which she did not want to go, threw her to the ground, choked her, bumped her head, removed her clothing and had sexual intercourse with her. This is evidence of rape, not of one of the lesser included offenses. The defendant's evidence is that he never had sexual intercourse with the prosecutrix and that he did not touch her after leaving the party; i.e., he did not touch her in a manner constituting an assault. This is evidence that the defendant committed neither the crime of rape nor any lesser offense included therein.

[5]  When, upon all the evidence, the jury could reasonably find the defendant committed the offense charged in the indictment, but could not reasonably find that (1) he did not commit the offense charged in the indictment and (2) he did commit a lesser offense included therein, it is not error to restrict the jury to a verdict of guilty of the offense charged in the indictment or a verdict of not guilty, thus withholding from their consideration a verdict of guilty of a lesser included offense. Under such circumstances, to instruct the jury that it may find the defendant guilty of a lesser offense included within that charged in the indictment is to invite a compromise verdict whereby the defendant would be found guilty of an offense, which he did not commit, for the sole reason that some of the jurors believe him guilty of the greater offense. The mere possibility that the jury might believe part but not all of the testimony of the prosecuting witness is not sufficient to require the Court to submit to the jury the issue of the defendant's guilt or innocence of a lesser offense than that which the prosecuting witness testified was committed.

In *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750, as in the present case, the prosecuting witness testified that the defend-

---

**State v. Lampkins**

---

ant had raped her. The defendant testified that he had never seen her prior to the trial. In finding no error in the trial resulting in the defendant's conviction of rape, Justice Moore, speaking for the Court, at page 699, said:

> " 'The trial court is not required to charge the jury upon the question of the defendant's guilt of lesser degrees of the crime charged in the indictment when there is no evidence to sustain a verdict of defendant's guilt of such lesser degrees.' 3 Strong, N. C. Index 2d, Criminal Law § 115 (1967). In the present case defendant's defense was that of an alibi—that he was not present when the alleged offense occurred. He, therefore, completely denies assaulting the prosecutrix or forcing her to have sexual intercourse with him. The prosecutrix testified positively that after the defendant had choked her and threatened to kill her, he forcibly and against her will had sexual intercourse with her, and that he did in fact penetrate her. Thus, there was no evidence of an assault with intent to commit rape, and the trial court was not required to charge on the lesser included offense. 'G.S. 15-169 and G.S. 15-170 [providing for convictions of lesser included offenses] are applicable *only when there is evidence* tending to show that the defendant may be guilty of a lesser offense.' *State v. Williams,* 275 N.C. 77, 88, 165 S.E. 2d 481, 488 (1969).' "

To the same effect see: *State v. Jarrette, supra,* at page 650; *State v. Bryant,* 280 N.C. 551, 556, 187 S.E. 2d 111; *State v. Carnes,* 279 N.C. 549, 184 S.E. 2d 235; *State v. Murry,* 277 N.C. 197, 176 S.E. 2d 738; *State v. Smith,* 201 N.C. 494, 160 S.E. 577; Strong, N. C. Index 2d, Criminal Law, § 115.

In *State v. Smith, supra,* the defendant was indicted for first degree burglary and rape. The Court, sustaining the conviction of rape, said:

> There is no evidence in contradiction of the prosecutrix except that of an alibi. According to her testimony, which contains a full recital of the crime, the prisoner was guilty of rape; according to his own evidence he was guilty of no offense. There is no aspect of the case that would justify a verdict merely of a simple assault or an assault with intent, and refusal to instruct the jury in reference to the lesser offense did not constitute reversible error. *State v. White.* 138 N.C. 704; *State v. Kendall,* 143 N.C. 659."

In *State v. Carnes, supra,* the defendant was indicted for armed robbery. The State introduced evidence which, if true, showed the commission of the offense charged. The defendant assigned as error the failure of the Court to instruct the jury that they might find him guilty of some lesser degree of the offense charged, such as common law robbery, attempted robbery, assault wtih a deadly weapon, or simple assault. Chief Justice Bobbitt, speaking for the Court, said:

> "G.S. 15-169 and G.S. 15-170 are applicable *only when there is evidence* tending to show that the defendant may be guilty of a lesser offense. *State v. Jones,* 249 N.C. 134, 139, 105 S.E. 2d 513, 516 (1958), and cases cited; *State v. Williams,* 275 N.C. 77, 88, 165 S.E. 2d 481, 488 (1969). 'The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. *The presence of such evidence* is the determinative factor.' *State v. Hicks,* 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954) ; *State v. Williams, supra.*"

There is no merit in this assignment of error.

The defendant's Assignment of Error No. 8 is that the Court erred in stressing the contentions of the State without giving equal stress to the contentions of the defendant. Assignment No. 13 is that the Court erred in relating facts to the jury that were not in evidence. We have carefully examined the entire charge of the Court with reference to these two assignments of error and we find no merit in either of them. We find no intimation in the charge of any opinion of the Court as to the weight or credibility of the evidence or as to the guilt or innocence of the defendant. The record does not disclose that any error or omission in the Court's review of the evidence or in its statement of the contentions of the parties was brought to the attention of the Court so that it might be corrected. Ordinarily, this must be done or the misstatement or omission is waived. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Feaganes,* 272 N.C. 246, 158 S.E. 2d 89; *State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477; Strong, N. C. Index 2d, Criminal Law, §§ 113, 118.

The defendant's Assignment of Error No. 20 is that the Court erred in entering a judgment imposing the death sentence

upon the verdict that the defendant was guilty of the offense of rape. The defendant's contentions with respect to the validity of the death sentence for rape have been carefully considered and found without merit by this Court in a number of recent decisions. See: *State v. Noell, supra; State v. Jarrette, supra; State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19. No useful purpose would be served by further demonstration of the lack of merit in this assignment of error.

The defendant's remaining assignments of error relate to the admission of certain testimony of the State's witnesses Oliver Montgomery and Eula Wilkinson, and to alleged failures of the Court to charge with reference to the burden of proof and the presumption of innocence, or are formal and directed to the discretion of the trial court. We have examined all of these carefully and find no merit in any of them. A detailed discussion of these assignments of error would serve no useful purpose.

This is a case in which there is a clear, sharp conflict between the testimony of Rosa Mae Barr and the testimony of the defendant with reference to what the defendant did from the time the two left the house of Barbara Garner to the arrival of the taxi driver at the telephone booth. She testified to the completed offense of rape. He testified that no criminal offense whatever was committed. The conflict raised a question of fact for the determination of the jury, it being the sole judge of the credibility of the witnesses.

[6] Neither in his brief, nor in oral argument, did the defendant contend that the death sentence imposed upon him is invalid because of the enactment, on 8 April 1974, after the offense, after his trial and after the imposition upon him of the death sentence, of Chapter 1201 of the Session Laws of 1973, dividing the crime of rape into first degree rape and second degree rape and providing that the punishment for second degree rape shall be imprisonment for life or for a term of years. We have, however, considered what effect, if any, the enactment of this 1974 Act has upon the validity of the sentence imposed upon this defendant. Our conclusion is that no reasonable basis exists for construing this 1974 Act to be retroactive and thus applicable to the sentence imposed upon this defendant. The reasons for this conclusion are fully set forth in Case No. 25, *State v. Williams,* decided this day, and need not be repeated here. A judge's personal reluctance to impose or affirm a sentence of death is not

a permissible ground for refusing to impose or affirm such a sentence required by the law applicable to the case before the Court.

This Court has authority to review the record on appeal and to grant a new trial or give other appropriate relief for an error of law committed by the trial court. It has no authority to grant a new trial or other relief to a defendant convicted of a criminal offense in a trial free from such error for the reason that it disagrees with the jury concerning the credibility of a witness for the State. It must accept as conclusive the verdict of the jury, so far as the credibility of witnesses is concerned. The Executive Department of the State Government, in the exercise of the power of pardon and commutation conferred upon it by the Constitution of North Carolina, Article III, § 5(6), is not so limited. In our opinion, the trial court committed no error of law which can properly serve as the basis for granting the defendant a new trial or other relief from the sentence imposed upon him by the Superior Court.

No error.

Chief Justice SHARP dissents as to the death penalty for the reasons stated in her dissenting opinion filed this day in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975).

Justice COPELAND dissents as to death sentence and votes to remand for imposition of a sentence of life imprisonment for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975).

Justice EXUM dissents from that portion of the majority opinion which affirms the death sentence and votes to remand this case in order that a sentence of life imprisonment can be imposed for the reasons stated in his dissenting opinion filed this day in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975).