STATE OF NORTH CAROLINA v. BERNARD LEVERNE WILLIAMS

No. 8014SC677

(Filed 7 April 1981)

**Rape § 6.1– second degree rape charged – instruction on assault with intent to commit rape required**

> In a prosecution for second degree rape based on allegations that defendant aided and abetted a co-defendant in the commission of a rape, the trial court erred in failing to instruct the jury on the lesser included offense of assault with intent to commit rape where substantial evidence, including testimony by a State's witness, was presented at trial tending to show that defendant was not present at the time of penetration.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 13 February 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 22 January 1981.

Defendant was charged in a proper bill of indictment with the felony of a Second Degree Rape based on allegations that he aided and abetted a co-defendant in the commission of a rape.

The State's evidence tended to show that defendant, Bernard Williams, and co-defendant, Michael McRae, were visiting friends in Eagleson Dormitory (a women's dormitory) on the campus of North Carolina Central University shortly after midnight on 11 May 1979. While in the dormitory, Williams and McRae went to Room 308 to see a friend, Gloria Pate. They entered Ms. Pate's room and found the prosecuting witness, Gladys Adams, asleep on one of the beds.

According to Ms. Adams, she awoke when she felt pressure on the bottom half of her body. Once awake, she discovered that her pants and underpants had been removed; that McRae was sitting on top of her; and that Williams was holding her hands over her head. Ms. Adams testified that McRae then forcibly and against her will had intercourse with her while Williams held her arms.

After approximately twenty minutes there was a knock on the door. McRae immediately put on his clothes; Williams released Ms. Adams' hands; and Ms. Adams put on her clothes. Pattrina Tollison (Ms. Adams' roommate from across the hall) then entered the room, picked up a soda and a piece of cake and left the room without speaking. Shortly thereafter, Gloria Pate, who had earlier studied with Ms. Adams, returned to her room.

After her arrival, Williams and McRae left. Williams and McRae were arrested at approximately 6:30 a.m. on 11 May 1979.

Defendant's evidence tended to show that Williams and McRae went to visit friends in Eagleson Dormitory at about 12:30 a.m. on 11 May 1979. While on the third floor, they stopped at the open doorway of Gloria Pate's room. They entered the room and found Gladys Adams asleep on the bed. Williams testified that he shook Ms. Adams by the arms to wake her up and say hello. He then told McRae and Ms. Adams that he was going upstairs to visit his girlfriend, and he left the room.

McRae testified that after he and Williams entered the room, they began caressing Ms. Adams' legs until she woke up. After she woke up, Williams left the room. McRae then talked with Ms. Adams and she consented to have sex with him. After McRae and Ms. Adams had intercourse and had dressed, Pattrina Tollison came into the room, picked up a soda, and left. Williams then returned to pick up McRae. Gloria Pate came into the room shortly thereafter, and Williams and McRae left.

The State's witness Pattrina Tollison also testified on cross-examination that when she entered the room to pick up her soda and cake, McRae and Ms. Adams were the only two people in the room. Upon leaving the room, she saw Williams walking down the hall, and talked with him for a few moments. She then saw him go into the room where McRae and Ms. Adams were.

In a consolidated trial, the jury found both the defendant and McRae guilty of second degree rape, and each was later sentenced to 40 years in prison. Defendant Williams appealed.

*Attorney General Edmisten, by Associate Attorneys Richard L. Kucharski and Tom Ziko, for the State.*

*Loflin and Loflin, by Thomas F. Loflin, III, for defendant appellant.*

BECTON, Judge.

In his appeal, defendant Williams makes thirteen (13) assignments of error. In his ninth assignment, he argues that the trial court erred in failing to instruct the jury on the lesser included offense of assault with intent to commit rape.

It is well established in North Carolina that:

When a defendant is indicted for a criminal offense he may be convicted of the charged offense or of a lesser included offense when the greater offense charged in the bill contains all the essential elements of the lesser offense, all of which could be proved by proof of the allegations of fact contained in the indictment.

State v. Riera, 276 N.C. 361, 368, 172 S.E. 2d 535, 540 (1970); State v. Cloninger, 37 N.C. App. 22, 25, 245 S.E. 2d 192, 194-95 (1978); G.S. 15-170. This Court and the North Carolina Supreme Court have held further that when there is some evidence to support the included offense, the defendant is entitled as a matter of law to have the jury instructed on the lesser offense. State v. Riera, supra; State v. Williams, 275 N.C. 77, 165 S.E. 2d 481 (1969); State v. Jones, 36 N.C. App. 447, 244 S.E. 2d 709 (1978). "The presence of such evidence is the determinative factor." State v. Hicks, 241 N.C. 156, 159, 84 S.E. 2d 545, 547 (1954); State v. Williams, supra. If the defendant is entitled to an instruction on the lesser offense, based on the presence of such evidence, it is of no legal significance that defendant's counsel did not make a specific request for the instruction nor that the defendant was subsequently convicted of the greater offense. State v. Riera, supra; State v. Jones, supra.

Second degree rape occurs when one unlawfully, wilfully, and feloniously ravishes and carnally knows a female by force and against her will. Actual penetration of the female sexual organ by the male sexual organ is an essential element of the offense. State v. Perry, 291 N.C. 586, 231 S.E. 2d 262 (1977); State v. Cross, 284 N.C. 174, 200 S.E. 2d 27 (1973). A defendant may also be convicted of second degree rape upon proof that he was present at the time of penetration and aided and abetted a co-defendant in the commission of the act. State v. Primus, 226 N.C. 671, 40 S.E. 2d 113 (1946). Assault with intent to commit rape, however, has been held to be a lesser included offense of second degree rape, State v. Green, 246 N.C. 717, 719, 100 S.E. 2d 52, 54 (1957), and is defined as an assault on a woman with the intent to gratify one's passion notwithstanding any resistance on her part. State v. Pearce, 296 N.C. 281, 293, 250 S.E. 2d 640, 648-49 (1979).

In this case, defendant Williams contends that substantial evidence was presented at trial tending to show that he was not present at the time of penetration and therefore was entitled to an instruction on the lesser offense of assault with intent to commit rape. Based on the evidence in the record, this court agrees.

It is undisputed that Williams did not have sexual intercourse with the prosecutrix. Additionally, Williams and McRae both testified that shortly after entering and waking Ms. Adams, Williams left the room. Williams testified:

> When I saw Gladys laying [sic] in the bed there, I shook her arm and woke her up. I said hi — how are you doing. She did not make any response to me. I told her, you know, I was going to my girlfriend's room.

> I left and Mike and Gladys were the only people in the room as I left. ...

Co-defendant McRae testified:

> Gladys was on the bed, and Bernard and I started caressing her legs. Then she woke up. Then Bernard left. ...

> It was a matter of minutes after we entered the room before Bernard left. He left immediately after she awakened. ...

McRae then testified that the act of sexual intercourse with Ms. Adams took place after Williams left the room.

It is true that Ms. Adams testified that Williams was in the room during the time the rape took place and was present when Pattrina Tollison entered the room just after the rape occurred. Tollison, testifying for the State, however, contradicted Ms. Adams on direct and cross-examination. Tollison said that when she entered the room, McRae and Ms. Adams were the only ones present. In light of the testimony tending to show that Williams was not present when intercourse took place and corroborated by one of the State's own witnesses, sufficient evidence was presented to support the submission of the lesser offense of assault with intent to commit rape to the jury.

The State argues that assault with intent to commit rape requires a showing that the defendant assaulted Ms. Adams

with a desire to gratify his sexual passion *notwithstanding any resistance* she might make. The State points out that a key aspect of Williams' defense at trial was that if he did assault Ms. Adams, he desisted immediately upon realizing that she would resist his advances. Therefore, the State argues, Williams cannot now claim that he had the intent to commit a rape notwithstanding any resistance by Ms. Adams. Without evidence of this essential element of assault with intent to commit rape, the State contends that the defendant was not entitled to an instruction on the lesser offense.

The State, however, presented evidence at trial designed to establish that Williams in fact did have the requisite intent to commit rape notwithstanding any resistance by Ms. Adams. Evidence was elicited on examination by the district attorney suggesting that Williams and McRae went into the room in which Ms. Adams was sleeping to have sex with her based on a bet between the two of them. Further, Ms. Adams testified that Williams held her arms before McRae raped her. The record indicates that Ms. Adams tried to get up ("I struggled to get my hands aloose and I tried to draw my legs together."); that McRae had to force her legs apart while Williams had her arms and hands "grabbed and cuffed together" over her head; and that she kept calling for Gloria Pate after McRae told her not to fight, not to holler, and not to call for Gloria.

On cross examination, McRae testified that he "removed her pants while Bernard [Williams] *held her arms down.* Bernard wanted to go first, but we decided I would go first." (Emphasis added.) Additionally, one of the investigating officers testified that McRae told him that: "Upon entering the room, *they* did close the door and cut the lights off and begin shaking her *and removing her clothes.*" (Emphasis added.) Because jurors may believe all, or any part, or none of what a witness has said on the stand, this testimony constitutes some evidence — direct and inferential — that Williams had the intent to commit rape notwithstanding any resistance on the part of Ms. Adams. This evidence of intent to commit rape notwithstanding any resistance on Ms. Adams' part, other evidence that Williams left at some point prior to carrying out his intent and evidence that Williams was not present when sexual intercourse occurred, is sufficient to support a finding by the jury that Williams was only guilty of assault with intent to commit rape. Therefore,

Williams was entitled to have an instruction on the lesser offense.

We find no need to address defendant's other assignments of error because those alleged errors are not likely to reoccur in a second trial. The trial court failed to instruct the jury on the lesser included offense of assault with intent to commit rape, and as a result, the defendant is entitled to a

New Trial.

Chief Judge MORRIS and Judge VAUGHN concur.